THE STATE OF IOWA, Appellee, v. JOHN A. JONES, JR., Appellant.

1. **Homicide:** SELF-DEFENSE. The killing of an assailant is excusable, on the ground of self-defense, only when it is, or reasonably appears to be, the only means of saving one's own life, or preventing great bodily injury. If the danger, which appears to be imminent, can be avoided in any other way, as by retiring from the conflict, the taking of the life of the assailant is not excusable.

2. **Evidence.:** DYING DECLARATIONS. The declaration of one criminally assaulted, "I am killed; I was helping Charlie," made at a time when the party was aware that he must surely die, is competent evidence of what the deceased was doing when he received the injury, which resulted in his death.

3. **Homicide:** ADMISSION OF ACCUSED: WEAPON USED AS EVIDENCE. The fact that the defendant, in a prosecution for homicide, admits the killing, is not a ground for the exclusion of the weapon, with which the crime was committed, from evidence.

*Appeal from Polk District Court.*—HON. C. P. HOLMES,
Judge.

TUESDAY, OCTOBER 10, 1893.

THE defendant was indicted for the crime of mur-
der in the first degree. He was convicted of murder
in the second degree, and he appeals.—*Affirmed.*

*McHenrys & Johnson,* for appellant.

*John Y. Stone,* Attorney General, *W. A. Spurrier,*
County Attorney, and *Thos. A. Cheshire,* for the State.

ROTHROCK, J.—It is conceded that on the night of
the twelfth day of June, 1891, the defendant killed
one Frederick Kemp by cutting him on and about the
head and neck with a razor. The killing occurred
during an altercation between the deceased and the
defendant and some other persons, and the sole ground
of defense, on the trial in the court below, was that
the homicide was committed in self-defense. The par-
ties to the affray, which resulted in the death of Kemp,
met at a camp meeting that was then being held in the
outskirts of the city of Des Moines. The defendant was
armed with a razor, and, after his arrival at the meet-
ing, he procured a revolver. While at the meeting
the defendant and two of his companions engaged in
a dispute with the deceased, his brother and one or
more companions, and the parties left the immediate
vicinity of the meeting for the purposes of a fight.
The defendant exhibited his revolver, and the brother
of the deceased had a revolver. No actual conflict in
the way of a general engagement took place between
the opposing forces, and there was no violence, except
that one of the defendant's friends pushed the deceased
over a guy rope attached to a camp meeting tent, and
the defendant struck one of the comrades of the

deceased on the head, and afterwards the party who
was struck threw a tin can at the defendant.  The par-
ties ceased to quarrel for a time, and all repaired to
the tent, where the camp meeting was in progress.
The defendant and his two friends left the tent and
proceeded in the direction of his home.  The deceased
and his friends, when they left the meeting, went in
the same direction, and at some distance from the tent
they encountered each other, at or near the corner of
Twelfth street and Forest avenue, where the fatal affray
took place.  There are a great many facts and circum-
stances disclosed in evidence touching the acts of the
parties from the first quarrel at the tent down to the
fatal encounter, and it is argued at great length, in
behalf of the appellant, that the verdict returned by
the jury is without support in the evidence.

I.  It would be an almost endless task to review
the evidence in an opinion, and we will not attempt
to do so.  It may be conceded, and we believe that
the preponderance of the evidence, so far as the num-
ber of witnesses who testified to the last encounter is
concerned, shows that the deceased and his friends
made the first assault, and attacked the defendant, and
one of them struck him with a piece of board.  But
there is a square conflict in the evidence on this ques-
tion.  If the evidence introduced by the state is to be
believed, the defendant and his friends were the
aggressors, not only in the affray at the tent, but in
the final struggle, in which the defendant took the life
of Kemp.  A careful examination of every fact and
circumstance disclosed in evidence satisfies us that this
is not a case in which this court is authorized to inter-
fere with the verdict as being contrary to the evidence.
The evidence is quite fully set out in the abstract of
the appellant.  There is an additional abstract pre-
pared by counsel for the state, the correctness of which
is denied by counsel for the appellant.  An examination

of these abstracts, in connection with the original record, has put us in possession of every feature of the evidence, and we do not hesitate to hold that we ought not to interfere with this verdict. It may not be amiss to say that none of the parties to the tragedy went to the camp meeting as worshippers. On the contrary, they went there armed with deadly weapons. The jury was fully warranted in finding from the evidence that the defendant was in possession of the razor with which he killed Kemp on the day of the killing, and that he sharpened it on a whetstone in a butchershop, where he made the declaration that "he was going to hold somebody up before camp meeting was over." Taking this evidence in connection with the fact that the defendant thought it necessary, after he arrived at the meeting, to add a revolver to his other weapon, it is not too much to say that he was at a great disadvantage in his endeavor to maintain that the homicide was excusable by reason of self-defense.

II. It is claimed that the court erred in the ninth paragraph of the charge to the jury. It is as follows:

"As before stated, the defendant admits the killing of Fred Kemp, and his claim is that, in what he then did, he was acting in self-defense. You are instructed, in relation to this claim of the defendant, that where one is assaulted by another person or persons, in such manner as to induce in the person assaulted a reasonable belief that he is at the time in actual danger of losing his life or of suffering great bodily harm, he is justified in defending himself, although the danger be not real, but only apparent; and he may use such force and means to defend himself as may in good faith reasonably appear necessary to him, as an ordinarily prudent man, under all the circumstances at the time surrounding him. All that is required of him is that he shall act from reasonable and honest convictions as to his danger, although

1. HOMICIDE: self-defense.

mistaken as to the extent of such danger. And if you shall find from the evidence in this case that, just before the defendant killed Fred Kemp, he had been assaulted by the said Fred Kemp, either alone or in connection with others, and that from the character of such assault, and the weapon used, if any, he had reason, as an ordinarily prudent man, to believe, and did in good faith and honestly believe, that he was in danger of being killed or of suffering great bodily injury, and that the parties were so situated that he could not have retreated, or that he could not reasonably have expected to preserve his life, or protect himself from injury, by retreating, then, and in that case, he was justified in using such force and such means to protect his life and person as may in good faith then have appeared necessary to him as an ordinarily prudent man, under all the circumstances then surrounding him, even to the taking of life. And if you shall find that he did not use greater force or more hazardous means to protect his life and person than really appeared to him necessary as an ordinarily prudent man, under the circumstances in which he was then placed, then, and in that case, such killing was not unlawful, and you should return a verdict of not guilty; but if you shall find that he did use greater force or more hazardous means than appeared to him necessary, as an ordinarily prudent man, in the position in which he was then placed, you can not acquit him on the ground of self-defense."

The specific objection to this instruction goes to that part of it which, under the facts recited, required the defendant to retreat or retire from the conflict unless it appeared to him, as a reasonably prudent man, that he could not retreat without danger to his life or danger of great bodily injury. It may be conceded that in the earlier adjudications of this court there is language employed which may be said to lay down the doctrine that one who is assailed with a deadly

weapon is not required to flee from his adversary, but may strike and kill in his own defense. See *Tweedy v. State*, 5 Iowa, 433. But in the later utterances of this court, and it may now be said to be the general rule elsewhere that, the killing of an assailant is excusable on the ground of self-defense only when it is, or reasonably appears to be, the only means of saving one's own life or preventing some great bodily injury. If the danger which appears to be imminent can be avoided in any other way, as by retiring from the conflict, the taking of the life of the assailant is not excusable. *State v. Maloy*, 44 Iowa, 104; *State v. Donnelly*, 69 Iowa, 705; *State v. Sullivan*, 51 Iowa, 142; *State v. Mahan*, 68 Iowa, 304; *State v. Shelton*, 64 Iowa, 333; *State v. Shreves*, 81 Iowa, 615.

Another objection is made to this part of the charge, which we do not regard as of sufficient importance to give it special consideration. It appears to us to be a mere criticism, and without substantial merit.

III. A great many other objections are made to rulings of the court which do not appear to us to require separate discussion. They relate to alleged misconduct of the jury pending the trial, and to the prejudice of certain jurors before they entered upon their duties. There were affidavits accompanying the motion for a new trial, and counter affidavits were filed, and witnesses were examined, as to the conduct of the jury, to such an extent as is rarely found in any record in this court. It is sufficient to say, of all these objections, that the court did not err in overruling the motion for a new trial on the grounds mentioned.

IV. Other objections consist of exceptions taken to the admission of an alleged dying declaration of the 2. EVIDENCE: dy- deceased. There was no error in this. ing declara-
tions. The declaration seems to have been made by the deceased when he was aware that he must surely die, and the fact is that he did die soon thereafter. The

declaration was in·these words: "I am killed. I was helping Charlie." There can be no doubt this was competent evidence of a fact as to what the deceased was doing when he received the fatal cuts with the razor in the hands of the defendant. This appears from the other facts attending the homicide.

V.    Objection was made to the introduction in evidence of the razor which the defendant used in taking

**3. HOMICIDE: admission of accused: weapon used as evidence.** the life of the deceased. Another objection was made to the introduction of certain evidence by the state in rebuttal, on the ground that the evidence was not rebutting. There is no real ground for these objections. The mere statement of the objection to the introduction of the razor in evidence is sufficient to·show how little ground there is for it.    Because the defendant admitted that he killed Kemp was no reason why the weapon which he used should not be introduced in evidence. There are other objections to this judgment which we do not think it necessary to refer to, more than to say that they are without merit. A careful examination of the whole record leads us to the conclusion that the case should be affirmed, and it is so ordered.    AFFIRMED.