## THE STATE OF IOWA v. L. K. LINHOFF, Appellant.

**Murder in the First Degree:** INSUFFICIENCY OF INDICTMENT. To
1 charge murder in the first degree by the use of a revolver, the
indictment must allege not only that the shooting was with a
specific intent, but that it was done willfully, deliberately,
premeditatedly and with malice aforethought. The indict-
ment in this case is held defective under the above rule.

**Presumption of Innocence:** INSTRUCTION. It is sufficient to in-
2 struct the jury that defendant is presumed innocent until
proven guilty beyond a reasonable doubt, and that it is for
the state to so prove every essential fact necessary to convic-
tion, and that these rules should be regarded throughout their
entire consideration of the case, without elaborating on the
presumption of innocence. This presumption should not be
treated as evidence.

**Self-Defense.** The right of self-defense continues until the one
3 attacked finds himself out of danger, not merely until he finds
himself out of apparent danger.

**Same.** Where deceased attacked defendant and was killed by one
4 of five successive shots, defendant was not guilty of man-
slaughter if the fatal shot was fired while acting in self de-
fense, although defendant continued firing as the result of
heat of blood, and passion caused by the assault.

*Appeal from Cerro Gordo District Court.*—HON. CLIFFORD
SMITH, Judge.

FRIDAY, OCTOBER 30, 1903.

DEFENDANT was indicted for the crime of killing Ed
Bromley. On being tried to a jury, she was convicted of
manslaughter, and sentenced to a term of two years in the
state penitentiary. She appeals.—*Reversed.*

*Glass, McConlogue & Witwer* and *Blythe, Markley &
Rule* for appellant.

*Chas. W. Mullan,* Attorney General, and *Chas. A.
Van Vleck,* Assistant Attorney General, for the State.

Dᴇᴇᴍᴇʀ, J.—The charging part· of the ·indictment reads: "The said L. K. · Linhoff, on the 20th day of August in the year of our Lord one thousand nine hundred and one (1901), in the county· aforesaid, did willfully, feloniously, deliberately, ˙premeditatedly and· of her malice aforethought, make an assault in, upon, against the body of one Ed Bromley, with a deadly weapon, being a revolver, that. the said L. K. Linhoff, then and there held in her hand, said revolver then and there being loaded and charged with powder and bullet, with the specific intent on her part to shoot and kill and murder the said Ed Bromley willfully, feloniously, deliberately, premeditatedly and of her malice aforethought, and that the said L. K. Linhoff did then and there with said. deadly weapon, being a revolver loaded and charged and held in her hand as aforesaid, shoot off, and discharge the contents of the sai:l deadly weapon at, against and into the body of the said Ed Bromley willfully, feloniously, deliberately, unlawfully, premeditatedly and of her, the said L. K. Lin- ˙hoff, malice aforethought, inflicting upon and· in the body ·of the said Ed Bromley a mortal wound from which said ˙mortal wound inflicted as aforesaid the said Ed Bromley ˙did˙ then and there die." The trial court submitted the case on the theory that this indictment charged murder in the ˙first˙ degree. ˙ Defendant complains of this, ·and says· that no higher· crime ·than murder in ₁the second degree is charged. It will be observed that the language is not carefully chosen. ·To constitute murder in the˙ first˙ degree, it must ·appear ˙not only that the revolver, if that be˙the˙ means used, was shot off with the specific intent to kill, but also that it was done willfully, deliberately, premeditatedly, and with malice aforethought. It is, quite common to charge an assault as well as the killing, and when this is done it must appear that both were willful, deliberate, and premed-

'ɪ. Mᴜʀᴅᴇʀ in the first de- gree: insuffi- ciency· of ·indictment.·

itated, and that the shooting, or whatever the means used, was with intent to kill. *State v. McCormick*, 27 Iowa, 402; *State v. Watkins*, 27 Iowa, 415; *State v. Baldwin*, 79 Iowa, 718; *State v. Andrews*, 84 Iowa, 88.

Tested by these rules, let us see if the indictment in this case charges that the killing was done willfully, deliberately, premeditatedly, and with malice aforethought. A willful, deliberate, and premeditated assault is charged, which is said to have been made with a revolver, "then and there being loaded with powder and bullet, with the specific intent to kill and murder." Whether or not the assault was made with specific intent to kill, or the revolver was loaded and charged with specific intent to kill and murder, is left to inference. Explanatory clauses generally relate to those expressions to which they stand closest. According to this rule of grammatical construction, the indictment does not even charge that the assault was with intent to kill. But it also charges that defendant did then and there, with said weapon, loaded and charged as aforesaid, shoot off and discharge the contents thereof into the body of Ed Bromley willfully, deliberately, premeditatedly, etc., inflicting a mortal wound, etc. In this respect the indictment is much like the one disapproved in *State v. Andrews, supra*, where we said: "The indictment accuses the defendant of having inflicted the wound which caused the death * * * feloniously, deliberately, premeditatedly, and with malice aforethought, but except in the concluding part it does not charge that the murder was so committed. The case is within the rule announced in *State v. McCormick*, 27 Iowa, 403, and, following that case, we must hold that the indictment does not charge the defendant with the crime of murder in the first degree, as to authorize his trial for that offense." Moreover, in the instant case the indictment does not directly charge that the revolver was shot off with the intent to kill. That is left to inference and

intendment.   All that is charged is that defendant made
an assault with a revolver, loaded with intent to kill, and
did then and there shoot off the revolver into the body of
Bromley willfully, deliberately, premeditatedly, etc.,.
inflicting a mortal wound, which caused death.   It is not
charged, except by the merest inference, that the assault
was made with the intent to kill, nor is it alleged that the
revolver was fired off with that intent.   As said in *State
v. McCormick, supra*: "The indictment does, indeed,
charge that the assault was willful, deliberate, and pre-
meditated, that the blow was dealt purposely, deliberately,
and with premeditation, but it does not charge that it was
thus dealt for the purpose or with the intent to kill, or
that the killing—the taking of the life of the deceased—
was willful, deliberate, and premeditated.   It needs no
arguments to show that an assault may be willful, delib-
erate, and premeditated without there being any intent
whatever on the part of the assailant to kill, or take the
life of, the person assaulted."   There is no doubt, in view
of the rule laid down in these cases, that the indictment
does not charge murder in the first degree.

The Attorney General relies on *State v. Stanley*, 33
Iowa, 528; *State v. Shelton*, 64 Iowa, 336; *State v. Dooley*,
89 Iowa, 589.   But they do not sustain his position.   In
*Stanley's Case* the indictment, after charging an assault
with a revolver loaded with powder and bullet, proceeds,
"And then and there the said Stanley did, by lying in
wait, and with the specific intent to kill, willfully, delib-
erately," etc., "shoot and discharge the contents of said
revolver into the body of," etc., "thereby inflicting a
mortal wound," etc.   In *Shelton's Case* the language is
almost identical with that used in the indictment in the
*Stanley Case*, and the same may be said of the indictment
in *Dooley's Case*.   The indictment under consideration no-
where charges that the act which caused the death was
done with the specific intent to kill.   The most that can

be said of it is that it charges an assault with a revolver, loaded with specific intent to kill, and a willful, deliberate, and premeditated and felonious discharge of the revolver in and upon the body of Bromley, which resulted in a mortal wound. The trial court was in error in submitting the question of murder in the first degree to the jury.

Even had the indictment been sufficient, we still think the evidence did not warrant the submission of this degree of crime. As there must be a retrial of the case, we shall not dwell upon the evidence any further than is necessary to an understanding of the points decided.

II. The trial court gave the usual instruction with reference to the presumption of innocence, and added: "These rules with reference to the presumption of inno-

2. PRESUMPTION of innocence: instruction. cence and the burden of proof are among the fundamental principles of our law, and must be regarded throughout your consideration of the evidence." Defendant asked instructions to the effect that this presumption stood as so much evidence. Indeed, his counsel seems to have copied a part of the opinion of the Supreme Court of the United States in *Coffin v. U. S.*, 156 U. S. 432 (15 Sup. Ct. Rep. 394, 39 L. Ed. 481), in one of their requests. There has been much speculation regarding the logical correctness of the argument used by the court in that case, and we have recently had occasion to say something regarding the use of the word "presumption." See *State v. Thiele*, 119 Iowa, 659. An essay on the proper construction of the word would be profitless at this time, for, as we view it, the trial court did not err in denying the defendant's requests. Whatever the true rule regarding the use and value of a presumption, there is always danger of obscuring it by over-refinement. When a jury is instructed, as in this case, that a defendant is presumed to be innocent unless and until he is proven guilty beyond a reasonable doubt, and that it is

for the state to prove every fact essential to defendant's conviction beyond a reasonable doubt, and that these rules are to be regarded throughout their consideration of the case, it has a more certain guide than where a trial court attempts by definition and elucidation to explain the genesis, growth, and legal aspect of the doctrine. There was no error in the instruction given. This is conceded, and we do not think there was any error in refusing to give the ones asked. It is enough to say that we do not approve of the doctrine that legal presumptions such as the one in question are to be treated as evidence. Indeed, the Supreme Court of the United States has repudiated that rule. *Agnew v. U. S.*, 165 U. S. 36 (17 Sup. Ct. Rep. 235, 41 L. Ed. 624); See, also, *People v. Ostrander*, 110 Mich. 60 (67 N. W. Rep. 1079.)

III.   Defendant claims that what she did was in defense of her husband and of her habitation, and she asked an instruction to the effect that, as she was upon her own premises when she claims she was attacked, she was not required to retreat. The instruction was correct, but, as the trial court fully covered the ground in its thirteenth instruction, there was no error.

IV.   Mention has already been made of the fact that defendant claims to have acted in defense of her husband and of her habitation. It is undisputed that she fired five shots from a revolver in rapid succession, one of which took effect and resulted in the death of Bromley. In instruction No. 19 the jury was instructed as follows: "The right of defense is founded on necessity, and is limited by necessity, either real or apparent. The right to kill an assailant in defense of another begins and ends where the necessity to save the person defended from death or great bodily harm apparently begins and ends. Therefore, even if the Bromleys attacked Linhoff with felonious intent, if they abandoned the attack and retreated, so that danger of death or great bodily harm from this was over, and this

was apparent to the defendant, her right to kill (if existing until then) would thereupon end. If, however, she merely continued to shoot under the influence of heat of blood and passion caused by such assault and conflict, she would only be guilty of manslaughter. Regard should be had to the partial obscurity of the night, the nature of the conflict, the distance the defendant was from it, her position with reference to the other parties, the rapidity of the shots, the smoke, if any, therefrom, and all the circumstances. Here, as elsewhere, the burden of proof is on the state." This instruction is erroneous in at least two particulars. In the first place, if one is unlawfully attacked, he may defend himself against the attack until he finds himself out of danger. The use of the word "apparent," as applied to the doctrine of retreat from one's adversary, is misleading. Where one unlawfully attacks another, that other has the right to protect himself against the attack, and to save himself from harm, and is not bound to draw nice calculations from appearances. These are sometimes deceiving. The rule, as we understand it, is that the one attacked may pursue his adversary until he finds himself out of danger. *State v. Collins*, 32 Iowa, 36.

3. SELF-DEFENCE.

But the more serious error in the instruction is in the paragraph relating to the continuance of the shooting. It will be observed that no reference is made in this instruction to the fatal shot. The language is that, if she "continued to shoot under, the influence of heat of blood and passion, caused by such an assault and conflict, she would only be guilty of manslaughter," and this without reference to whether the fatal shot was fired before or after Bromley abandoned the attack. If the shot which inflicted the wound was fired before Bromley retreated, then it was entirely immaterial how many shots were fired afterwards. Defendant should not be convicted because she fired ineffectively

4. SAME.

after her assailant had retreated. Careful analysis of the instruction in the light of the evidence adduced, which tended to show that it was the third shot which took effect, leads us to the conclusion that it cannot be sustained.

V.   Some other questions are argued, which are not likely to arise on a retrial; hence they need not be considered.

For the errors pointed out, the judgment must be reversed, and the cause remanded for a retrial.—REVERSED.

SHERWIN, J.—I concur in the result reached, but do not agree with the conclusion announced in the first division of the opinion.