## STATE OF IOWA v. FRANK DYER, Appellant.

**Murder in the first degree:** INDICTMENT: SUFFICIENCY. An indictment charging that the shooting of deceased was with specific intent to kill and that it was done wrongfully, deliberately, premeditatedly and with specific intent to kill and murder, charges murder in the first degree.

**Evidence:** DYING DECLARATIONS. Statements concerning the homicide made by a deceased *in extremis,* and in the belief that he had been mortally wounded, are admissible as dying declarations.

**Evidence:** EXCLUSON: PREJUDICE. The erroneous exclusion of evidence which is subsequently admitted is not prejudicial.

**Murder:** SELF-DEFENSE: DUTY TO RETREAT: INSTRUCTION. The killing of an assailant is only excusable on the ground of self-defense, where it reasonably appears to be the only means of saving one's own life, or preventing great bodily injury. If the danger which appears to be imminent can be avoided in any other way, as by retreating, the taking of the life of the assailant is not justifiable.

**Same.** Where it appears that the accused had a room in the house of the deceased, but that the assault was made in one of the living rooms of the house and not in the room of defendant, his duty to retreat existed the same as though the assault had occurred at some other place where the rights of each were equal.

**Murder:** SUBMISSION OF LOWER OFFENSES. Where it is shown in a prosecution for murder that the deceased died within a few days after he was shot by defendant, the court's refusal to submit the question of defendant's guilt of some offense lower than a degree of homicide was proper.

**Self-defense:** EVIDENCE. Under the evidence in this case the question of whether accused shot deceased in self-defense was for the jury.

*Appeal from Monona District Court.*—HON. DAVID MOULD, · Judge.

MONDAY, FEBRUARY 8, 1910.

REHEARING DENIED, THURSDAY, APRIL 14, 1910.

THE defendant was indicted for the crime of murder in the first degree. Upon trial he was convicted of manslaughter and appeals.—*Affirmed.*

*Sullivan & Griffin, B. F. Ross* and *E. L. Conlin,* for appellant.

*H. W. Byers,* Attorney-General, *Chas. W. Lyon,* Assistant Attorney-General, for the State.

DEEMER, C. J.—That defendant shot one E. C. Kirk and inflicted a wound from which he almost immediately died is practically admitted. Defendant relied largely upon the defense of self-defense. This defense was submitted to the jury, but without avail. For a reversal many propositions are relied upon, which we shall consider in the order presented by the briefs.

It is first insisted that the trial court was in error in submitting the crime of murder in the first degree, for the

1. MURDER IN THE FIRST DEGREE: indictment: sufficiency. 

reason that the indictment does not charge that degree of homicide. To meet this proposition it will not be necessary to do more than set forth the charging part of the presentment. It reads as follows:

For that the said Frank Dyer then and there, and in and upon the body of one E. C. Kirk, willfully, feloniously, deliberately, premeditatedly, and with malice aforethought, did commit an assault with a deadly weapon, to wit, a revolver, then and there loaded with powder and ball, the particular description of said revolver being to this grand jury unknown, and said revolver being then and there held in the hands of the said Frank Dyer, and then and there the

said Frank Dyer did, with a specific intent to kill and murder the said E. C. Kirk, willfully, feloniously, deliberately, premeditatedly, and with malice aforethought, shoot off and discharge the contents of said deadly weapon ·at, against, and into the body of the said E. C. Kirk, thereby wrongfully, willfuly, feloniously, deliberately, premeditatedly, and with malice aforethought, and with the specific intent aforesaid, inflicting upon the body of the said E. C. Kirk a mortal wound, of which mortal wound the said E. C. Kirk did, on or about the 3d day of March, A. D. 1909, die.

That this charges murder in the first degree, see cases cited in 1 McClain's Criminal Law, 367. It not only charges that the shooting was with the specific intent to kill, but also that it was done wrongfully, deliberately, premeditatedly, and with the specific intent to kill and murder. This is sufficient. *State v. Townsend*, 66 Iowa, 741; *State v. Stanley*, 38 Iowa, 526. The cases relied upon for appellant are not in point. In *State v. Andrews*, 84 Iowa, 88, there was no allegation that the killing was done deliberately, premeditatedly, and with malice aforethought, and the same defect ·appears in the indictment in *State v. Linhoff*, 121 Iowa, 632. Here both the assault and the killing are alleged to have been done with the intent to kill and murder.

II.    The ·state was permitted, over defendant's objections, to introduce what `were said to be the dying declarations of Kirk. It is said that no proper foundation was laid for this testimony. It sufficiently appears that, when · these declarations were made, deceased was in *articulo mortis*. He then believed that he had been mortally wounded, had been told by his physician that he could not recover, ·and was in fact *in extremis*, under the rule announced in *State v. Murdy*, 81 Iowa, 603; *State v. Kuhn*, 117 Iowa, 216; *State v. Dennis*, 119 Iowa, 688, and other like cases.

2. EVIDENCE: dying declarations.

III.    Complaint is made of the court's refusal to per-

mit defendant to testify as to why he thought the bullet
which he shot ranged upward.   As he after-
ward testified to this matter without objec-
tion, no prejudice resulted from the ruling
on a previous question, even if it were erroneous.

3. EVIDENCE:
    exclusion:
    prejudice.

IV.   The ninth instruction given by the trial court is
complained of.   It reads as follows:

In determining whether or not the shot was fired with-
out legal excuse or justification, you are instructed that the
defendant admits the killing of E. C. Kirk.   And his claim
is that in what he did he was acting in self-defense.   You
are instructed, in relation to this claim of the defendant,
that where one is assaulted by another person in such a
manner as to induce the person assaulted to reasonably be-
lieve that he is at the time in actual danger of losing his
life, or of suffering great bodily harm, he is justified in
defending himself, although the danger be not real, but
only apparent, and he may use such force and means to
defend himself as may in good faith appear necessary to
him as an ordinarily prudent and courageous man, under
all the circumstances at the time surrounding him.   And
he is not bound to draw nice calculations from appear-
ances.   All that is required of him is that he shall act
from reasonable and honest convictions as to his danger,
although mistaken as to the extent of said danger.   But
before one is justified in taking life in self-defense, it
must be, or it must reasonably appear to be, the only
means of saving one's own life, or of preventing great
bodily injury.   If it is evident to the assaulted that the
danger which appears to be imminent can be avoided in
any other way, as by retreating from the conflict, the
taking of .the life of the assailant is not excusable.   And
if you shall find from the evidence in this case that just
before the defendant killed E. C. Kirk, he had been unlaw-
fully assaulted by the said E. C. Kirk, and that from the
character of said assault and the weapon used he had rea-
son, as an ordinarily prudent and courageous man, to be-
lieve, and did in good faith and honestly believe, that he
was in danger of being killed, or suffering great bodily in-
jury, and that the parties were so situated that he could not

have retreated, or that he could not reasonably have expected to have preserved his life or protect himself from injury by retreating, then and in that case he was justified in using such force and such means to protect his life and person as may in good faith then have appeared necessary to him as an ordinarily prudent and courageous man, under all the circumstances then surrounding him, even to the taking of life. And if you shall find that he did not use greater force, or more hazardous means to protect his life and person than really appeared to him necessary as an ordinarily prudent and courageous man under the circumstances in which he was then placed, including the nature and manner of the assault, then and in that case the killing was not unlawful, and you should return a verdict of not guilty. But if you find that he did use greater force, or more hazardous means than appeared necessary to protect himself from great bodily harm, as an ordinarily prudent and courageous man under the circumstances in which he was then placed, including the nature and manner of the assault, you can not acquit him on the ground of self-defense. And, in determining whether or not the defendant in doing what he did acted in self-defense, you will remember that the burden of proof is upon the state to prove, beyond a reasonable doubt, that in doing what he did he was not acting in self-defense. If after considering all the evidence introduced in this case a reasonable doubt arises in your minds as to whether or not the defendant in doing what he did was acting in self-defense, then the state has not proved the defendant guilty beyond a reasonable doubt. 'A great bodily injury,' as used in these instructions, means a more serious bodily injury that results from an ordinary battery.

The chief complaint made of this is that it imposed upon defendant the duty of retreat. This is said to be error for two reasons: First, because one assaulted is not bound to retreat, but may repel force with force; and, second, because one in his own habitation is not bound to retreat under any circumstances. *State v. Goering,* 106 Iowa, 636; *State v. Evenson,* 122 Iowa, 88; *Young v. State,* 74 Neb. 346

4. MURDER: self-defense: duty to retreat: instruction.

(104 N. W. 867, 2 L. R. A. (N. S.) 66), are relied upon. None of these cases is in point. In the *Evenson* case defendant was accused of an assault with intent to inflict a great bodily injury, and in the *Goering* case the defendant was charged with a simple assault, and in each of these cases it was held that, where one is assaulted, and the character thereof does not involve life or great bodily injury, the person assaulted is not bound to retreat. That these cases are not applicable to the one at bar sufficiently appears from the following quotation, taken from *State v. Evenson, supra*: "We do not overlook the many cases wherein it is held that one may not, under the plea of self-defense, justify the taking of human life, if it reasonably appears that the same could have been avoided by · making use of an avenue of escape open to him. But the principle thus declared upon has no application to a case where, as in the case at bar, one is wrongfully assaulted, and repels force by the use of like force. In the one case the law regards the liberty of the citizen to come and go as he pleases without molestation, save at the hands of the law, as the thing paramount. In the other case the law regards the temporary deprivation of the exercise of personal liberty on the part of one citizen as of less importance than is the life of another citizen, and this even though the latter is for the moment engaged in making an unlawful assault upon the former. Hence the injunction that a person assaulted must retreat, if he can do so in reasonable safety, before resorting to the extreme measure of taking the life of his assailant.

The rule applicable to this case is announced in *State v. Bennett,* 128 Iowa, 713; *State v. Rutledge,* 135 Iowa, 581; *State v. Jones,* 89 Iowa, 182; *State v. Warner,* 100 Iowa, 260, and other like cases. From the *Jones* case *supra,* we quote the following: "The specific objection to this instruction goes to that part of it which, under the facts recited, required the defendant to retreat or retire

from the conflict, unless it appeared to him, as a reasonably prudent man, that he could not retreat without danger to his life, or danger of great bodily injury. It may be conceded that in the earlier adjudications of this court there is language employed which may be said to lay down the doctrine that one who is assailed with a deadly weapon is not required to flee from his adversary, but may strike and kill in his own defense. See *Tweedy v. State*, 5 Iowa, 433. But in the latter utterances of this court, and it may now be said to be the general rule elsewhere, that the killing of an assailant is excusable on the ground of self-defense only when it is, or reasonably appears to be, the only means of saving one's own life, or preventing great bodily injury. If the danger which appears to be imminent can be avoided in any other way, as by retiring from the conflict, the taking of the life of the assailant is not excusable." In the *Warner* case we said: "We have stated the rule applicable to the law of self-defense. In the late case of *State v. Jones*, 89 Iowa, 183, it is said: 'That the killing of an assailant is excusable on the ground of self-defense only when it is, or reasonably appears to be, the only means of saving one's own life, or preventing some great bodily injury. If the danger which appears to be imminent can be avoided in any other way, as by retiring from the conflict, the taking of the life of the assailant is not excusable.' The instructions of the court upon this branch of the case are assailed as erroneous. We will not set them out. They are in accord with the rule above announced, and with many other cases determined by this court." In *State v. Bennett, supra*, we said: "In the earlier cases in this court it was held that there was no duty to retreat where one was assailed with a deadly weapon. See *Tweedy v. State*, 5 Iowa, 433. While in the later adjudications it has been held that such duty exists under ordinary circumstances. See *State v. Jones*, 89 Iowa, 182, and cases cited therein. But none of the

latter cases decide the exact point involved here, which is, briefly, whether a person, while on his own premises, must retreat from a felonious assault. It is the universal rule that the dwelling house is the castle, and that no retreat is necessary therein, and we see no sound reason for holding that a greater obligation exists when the accused is on his own premises, where he has a right to be, and which constitutes a part of his residence and home."

It does not appear that defendant was on his own premises when he claims to have been assaulted by the deceased. The most that can be said is that he had a room in the house of the deceased which he called his own, and that he made his home there.

5. SAME.

The alleged assault was not made upon him while he was in his room, but in the dining room or parlor of the house belonging to the deceased. This was not defendant's castle. It belonged to and was occupied by the deceased, and defendant was not, under the circumstances, permitted to stand his ground in order to defend his premises. In other words, the duty of retreat applied to him just the same as if he were upon the street, or in any other place where the rights of the disputants were equal. Generally speaking, the duty of retreat applies in this jurisdiction, and the rule was correctly stated by the trial court in its instruction which is now challenged.

V. As the deceased died within a few days after he was shot, the trial court did not err in refusing to submit to the jury the question of defendant's guilt of some offense lower than a degree of homicide. *State v. Perigo*, 80 Iowa, 37; *State v. Mahan*, 68 Iowa, 304; *State v. Walker*, 133 Iowa, 489. Under the testimony defendant was guilty of manslaughter, if guilty of any offense, and there was no error in not submitting the various degrees of crime lower than that offense.

6. MURDER: submission of lower offenses.

VI. Lastly, it is argued that the testimony fails to show that defendant was not acting in self-defense. We are not disposed to take this view of the case. That question was primarily for a jury. From the testimony it appears that the deceased was very drunk, and that while he may have assaulted, or attempted to assault, defendant with a knife, the way for escape was open and easy. Other persons were present to aid the defendant, and they had succeeded, down to the time of the shooting, in keeping deceased away from the defendant. Defendant had armed himself with a gun before having any trouble with the deceased. He knew that deceased was much intoxicated, and a jury may very well have found that he could easily have avoided the assault, which he claims deceased was threatening to make with a knife. We can not say, as a matter of law, that defendant was acting in self-defense. That was a fair question for the jury under the record before us.

*7. Self defense: evidence.*

No prejudicial error appears, and the judgment must be, and it is, *affirmed.*