STATE OF IOWA, Appellee, v. DELL SHANNON, Appellant.

No. 41091.

JUNE 24, 1932.

John Fletcher, Attorney-general, Neill Garrett, Assistant

Attorney-general, John W. Gwynne, County Attorney, and Burr C. Towne, Assistant County Attorney, for appellee.

John H. Meyers, for appellant.

STEVENS, J.—The crime charged was committed on the night of December 31, 1931, but the evidence does not disclose the exact hour. It appears without conflict in the evidence that Ralph Rourke, the deceased, was intoxicated during the afternoon, and to some extent at least, at the time he was shot and killed by the defendant. A short time prior to the shooting there was an altercation between the deceased and one Remington, who was also intoxicated. Remington resided a short distance from the home of the defendant. Rourke was in the company of one Roger Aldrich, and during a conversation between them and the defendant, inquiry was made as to where some liquor could be obtained. The defendant inquired as to the price the two men were accustomed to pay for alcohol, and was informed that it was $9.00 per gallon. The defendant then told them that he thought he could furnish them a gallon of alcohol for $9.00. This conversation occurred immediately in front of Remington's residence. The defendant returned to his home, and in about 20 minutes Rourke rapped on the rear door of his residence; and when defendant responded, he was informed that the parties would take the liquor. The defendant placed a gallon can of alcohol under his left arm and took a revolver in his right hand, which he kept in his right overcoat pocket, and proceeded to deliver the liquor to the deceased. Aldrich was present, but a short distance away. Instead of accepting and paying for the liquor, Rourke approached the defendant from the rear, throwing his arms around him so as to prevent him from using his hands. The defendant continued to hold the can of liquor under his left arm and the pistol in his right hand, which was still inserted in his overcoat pocket. Aldrich took no part in the conversation or altercation, but the defendant testified that, after Rourke took hold of him, Aldrich advanced one step. The defendant testified that Rourke told him to drop the can or he would kill him. The defendant further testified that Rourke finally got his arms around his neck so as to partially shut off his breath, thus, to some extent, releasing the defendant's right hand. While in this position, the defendant fired the pistol over

his left shoulder, apparently killing Rourke instantly. No other assault of any kind was made by Rourke upon the defendant, and Aldrich took no active part whatever in the affair. An indictment charging the defendant with the crime of murder was promptly returned by the grand jury. The defendant set up as defenses that he shot the deceased in the lawful defense of his person and property. The charge of murder in the first degree was withdrawn, and only murder in the second degree and manslaughter were submitted to the jury.

All of the propositions relied upon for reversal are based upon alleged errors in the court's charge to the jury.

 I. The court in Paragraph 4 of its charge instructed the jury that, if it entertained a doubt as to the degree of the offense, if any, of which the defendant was guilty,—that is, of murder in the second degree or manslaughter, it should return a verdict of guilty of the degree only of which they entertained no reasonable doubt as to the defendant's guilt. The exceptions to this instruction are based upon the thought that the court told the jury that the defendant must be convicted of one or other of the offenses. The court in the preceding paragraph instructed the jury that, if they failed to find the defendant guilty beyond a reasonable doubt of murder in the second degree, or manslaughter, a verdict of not guilty should be returned. The exceptions to this instruction are without merit.

 II. Proper exceptions were preserved to Paragraph 13 of the court's charge to the jury. This instruction is as follows:

"The statutes of this state provide that it shall be unlawful for any person to go armed with, and have concealed upon his person, a pistol, revolver or other offensive and dangerous weapon unless a permit so to do has been granted by the sheriff. Any person violating this law shall be guilty of a felony.

"If you find from the evidence, beyond a reasonable doubt, that the defendant at the time of the killing was engaged in carrying on his person a concealed weapon, and you further find that such killing was not done in lawful defense of property in his lawful possession, as defined in these instructions, nor done under sufficient provocation to reduce the offense to manslaughter, then in such case you should return a verdict of guilty of murder in the second degree."

The justification for this instruction, if any, is to be found

in the fact that the defendant armed himself with a pistol when he took a gallon can of alcohol under the left arm and proceeded to the place agreed upon for the purpose of making delivery of the alcohol to the defendant and his companion. The weapon was manifestly unlawfully in the possession of the defendant. Just what inference the jury might possibly draw from this instruction is not altogether clear. If the alleged assault made upon the defendant was of such a character as to justify the use of a deadly weapon, it was not material that the defendant was not in the rightful possession thereof. In making a proper resistance or defense to an assault made with the intent to kill or to inflict enormous bodily injury, the person assailed may, within the well established limitations of the law, use a deadly weapon, and it can make no difference that his possession thereof was felonious. This would seem to be necessarily true. Authorities upon the point are scarce indeed, but see Moore v. State, 160 S. W. (Ark.) 206. The instruction, for the reasons indicated, cannot be sustained. The court cannot say as a matter of law that it was not prejudicial.

III. Perhaps the most important question presented on this appeal involves Instruction 23, which is as follows:

"As to the sufficient resistance that one may make in the defense of property lawfully in his possession, you are instructed that in defense of property lawfully in his possession the defendant is warranted in making such defense as a reasonable man would make under similar circumstances, as you have been hereinbefore instructed.

"As to a defense of such property as the intoxicating liquor which was in the possession of the defendant, you are instructed that it is the law of this state that no one shall have possession of or transport intoxicating liquor, except under the provisions of the chapters relating to licensed pharmacists as permit holders, and relating to sacramental wines. The law further provides that any person who shall keep or carry around on his person any intoxicating liquor with intent to sell or dispose of the same by gift or otherwise shall be termed a bootlegger and shall be punished, and that the possession of liquor in violation of law would not be the lawful possession of property."

The proposition here presented is not only somewhat novel, but is one which must largely be decided without the aid of

direct authority. It was the claim of the defendant that his assailant was attempting to forcibly and with violence deprive him of the gallon can of alcohol. No doubt, the possession of the intoxicating liquor, upon the record before us, was in violation of the prohibitory law. The right to the defense of the person and property is conferred in this state by statute as follows (Code 1931):

"12921. Lawful resistance to the commission of a public offense may be made by the party about to be injured, or by others.

"12922. Resistance sufficient to prevent the offense may be made by the party about to be injured:

"1. To prevent an offense against his person.

"2. To prevent an illegal attempt by force to take or injure property in his lawful possession.

"12923. Any other person, in aid or defense of the person about to be injured, may make resistance sufficient to prevent the same."

It will be observed that Subdivision 2 of Section 12922 of the foregoing statute specifically authorizes a person in the lawful possession of property to resist by force an illegal attempt by another to take the same from his possession or to injure such property. The so-called Volstead Act provides that no property rights shall exist in intoxicating liquor illegally possessed. Prior to the enactment of this law by the Congress of the United States it was held by this court that intoxicating liquors, although illegally possessed, might nevertheless be the subject of larceny. State v. May, 20 Iowa 305; State v. Sego, 161 Iowa 71. This is the general rule established by the courts of other jurisdictions. Since the enactment of the Volstead Law, the question whether intoxicating liquor may be the subject of larceny has arisen in numerous jurisdictions. The earliest case to be decided on this point, so far as we have been able to discover, was People v. Otis, 139 N. E. (N. Y.) 562. The New York Court of Appeals in that case held that, notwithstanding the provision of the Volstead Act, the possessor of intoxicating liquor has some inherent, though not property, right, or value therein, which may make it the subject of larceny. The decision in the New York case has been followed or the doctrine approved in numerous subsequent cases. Gallagher v. United States, 6 Fed. Rep. (2d Ser.)

758; Patmore v. United States, 1 Fed. Rep. (2d Ser.) 8; Burgess v. State, 155 Atl. (Md) 153; Ray v. Commonwealth, 20 S. W. (2d Ser.) 484 (Ky.); People v. Kilpatrick, 245 Pac. (Colo.) 719; Lout v. State, 244 Pac. (Okla.) 818; State v. Cohen, 147 Atl. (N. J.) 325; People v. Odenwald, 285 Pac. (Cal.) 406.

The possession of intoxicating liquor, except as provided in Chapter 94 of the Code of 1931, is unlawful. It is also provided by Section 2065 of the Code that "All payments or compensation for intoxicating liquor sold in violation of this title, whether such payments or compensation be in money or anything else whatsoever, shall be held to have been received in violation of law, and to have been received upon a valid promise and agreement of the receiver to pay on demand to the person furnishing such consideration the amount of said money, or the just value of such other thing;" and by Section 2066 that "All sales, transfers, liens, and securities of every kind which, either in whole or in part, shall have been made for or on account of intoxicating liquors sold in violation of this title shall be null and void;" and by Section 2067 that "No action shall be maintained for intoxicating liquors or the value thereof, sold in any other state or country, contrary to the law of said state or country," nor shall any action be maintained for the recovery or possession of intoxicating liquor or the value thereof, except in cases where persons owning or possessing such liquor with lawful intent may have been illegally deprived of the same.

It is clear, therefore, that the can of alcohol was not property in a commercial sense. It nevertheless, under the doctrine of the cases cited, possessed some inherent value, and might be made the subject of larceny. As between the defendant and his alleged assailant, the former was entitled to the benefit of such inherent value in the liquid, whatever it might be. As between these two parties, the appellant was lawfully in possession. If the liquor might be the subject of larceny, it might also be the subject of robbery. To deprive the possessor thereof against his will with force and violence would be a felony. The defendant's assailant could not, therefore, with impunity steal the liquor nor rob the defendant thereof. It must be borne in mind that our discussion at this point is directed solely to the instruction complained of. We are not attempting final construction and analysis of the statute.

The law of self-defense has frequently been the subject of

discussion by this court. The rules governing it are fully covered by a number of our prior decisions, and we shall not restate or discuss them, but see State v. Thomas, 172 Iowa 485; State v. Piernot, 167 Iowa 353; State v. Brooks, 192 Iowa 1107.

Under the provisions of the statute quoted, the right of one to prevent an illegal attempt by force to take or injure property in his lawful possession is clearly given. It is also the law that, in resisting the commission of a felony, the one assailed has the right to meet force with force and to interpose and use a deadly weapon within established limitations and under such circumstances as are clearly pointed out in numerous decisions of this court and authorities from other jurisdictions. State v. Metcalfe, 203 Iowa 155; State v. Burzette, 208 Iowa 818; State v. Sipes, 202 Iowa 173; State v. Holbrook, 192 Pac. (Ore.) 640; State v. Terrell, 186 Pac. (Utah) 108; State v. Mills, 69 Atl. (Del.) 841; State v. Holbrook, 188 Pac. (Ore.) 947; Bloom v. State, 58 N. E. (Ind.) 81.

The instruction we are considering is, in the light of the foregoing authorities, clearly erroneous. A rule which would make intoxicating liquors having inherent, though not property, value the subject of larceny or robbery, but which would deny to the possessor the right to resist an attempt to thus deprive him thereof, would be illogical and unsound. The possible effect of the instruction was to cause the jury to believe that, as the defendant was unlawfully in the possession of the liquor, because such possession of the liquor was in violation of the prohibitory liquor law, he had at most a qualified or uncertain right to defend such possession. We think the instruction is erroneous and cannot be sustained.

IV. The court in another instruction advised the jury that when a person is assaulted by another it is his duty to retreat, if same is safely open to him, before the use of force will be excused. There are, of course, circumstances under which the party is bound to retreat, but this is not true in all cases although the party assailed is not within his habitation or upon his own premises. State v. Sipes, supra; State v. Gough, 187 Iowa 363; State v. Burzette, 208 Iowa 818; State v. Leeper, 199 Iowa 432; State v. Borwick, 193 Iowa 639.

According to the testimony of the defendant, his assailant had his arms pinioned and in a position from which retreat would have been difficult, if not impossible. Whether the de-

fendant's life was, in fact, in danger, or whether he, as a reasonably cautious and courageous man, might rightfully have believed he was in danger of losing his life or of suffering enormous bodily harm from the assault alleged to have been made upon him, it was not his absolute duty to retreat. The court apparently overlooked the situation in which the defendant was placed at the time. If he could not, because of the character of the assault being made upon him, retreat, he was not required to do so before he could repel a felonious assault by such force as would appear to a reasonable person to be reasonably necessary.

Other matters are complained of and argued by counsel, some of which at least should not occur upon a retrial of this case, but we deem it unnecessary to discuss them. For the reasons already indicated the judgment below must be, and it is, reversed.—Reversed.

All the justices concur.