STATE OF IOWA, Appellee, v. CRESSER NORTON, Appellant.

No. 44762.

14

JUNE 20, 1939.

REHEARING DENIED SEPTEMBER 29, 1939.

Fred D. Everett, Attorney General, Jens Grothe, Asst. Attorney General, and Edward J. Grier, County Attorney, for appellee.

Hunt & Hunt, for appellant.

STIGER, J.—Defendant plead self-defense. Defendant's first assignment of error is that the court erred in admitting in evidence a voluntary written statement made by him a few days after he was arrested which is designated Exhibit P-1. Defendant claims that the exhibit was not a confession because it was a statement accompanied by an explanation which negatived criminality and the error complained of is that "while the Court finally withdrew Exhibit P-1 from the consideration of the jury as a 'Confession' he nevertheless admitted it as an 'Admission', without separating out the parts which were 'Admissions' from any parts which might be, or thought to be, 'Confession'."

The statement was not a confession because it was not an acknowledgment of guilt of the crime charged. The instrument contained a statement of facts and circumstances from which guilt might be inferred, constituted substantive evidence of the facts stated, and was admissible as an admission in support of the charge. State v. Davis, 212 Iowa 131, 235 N. W. 759; State v. Long, 189 Iowa 512, 178 N. W. 321; State v. Cook, 188 Iowa 655, 176 N. W. 674; State v. Abrams, 131 Iowa 479, 108 N. W. 1041.

The trial court, in instruction 16, after giving the usual cautionary statement of the weight to be given admissions, stated:

"16. There has been admitted in evidence in this case and will be before you for your consideration on Exhibit P-1 which has been referred to as a confession signed by the defendant.

"You are instructed that this exhibit is not admitted as being a confession of guilt on the part of the defendant, but as an admission by him of the truth of the matters therein contained."

Exhibit P-1 was not a confession, was admissible as an

16

admission, and the trial court gave a correct instruction in regard to it.

Defendant complains that Exhibit P-1 had been before the jury as a confession repeatedly during the course of the trial and that the court, in excluding the exhibit as a confession but admitting it as an admission, should have defined such terms so that the jury would be in a position to distinguish them. The state, in introducing the exhibit, did not refer to it as a confession and we are unable to find in the record a reference to the exhibit as a confession that would constitute prejudicial error to the defendant. The court specifically told the jury that the exhibit was not a confession. There is no error in this assignment.

II. Defendant, on the issue of self-defense, did not offer evidence of the actual character and general reputation of deceased as a violent, dangerous, quarrelsome man of which he had knowledge. State v. Rhone, 223 Iowa 1221, 275 N. W. 109; State v. Leeper, 198 Iowa 83, 199 N. W. 341; State v. Wallack, 193 Iowa 941, 188 N. W. 131. A witness for defendant was asked about the conduct of the deceased when he was requested to assist in repairing a road in the neighborhood. Defendant states that the purpose of the question was to show that the deceased had a violent disposition and predicates error on the action of the court in sustaining an objection to the question. Defendant did not offer to show what answer the witness would have. given. Assuming that the answer would have been favorable to the defendant, the question called for specific acts of Carder at a time remote from the date of the crime, it was not shown that the conduct referred to was known to the defendant and the court was right in sustaining the objection. State v. Beird, 118 Iowa 474, 92 N. W. 694; State v. Hunter, 118 Iowa 686, 92 N. W. 872; State v. Buford, 158 Iowa 173, 139 N. W. 464; State v. Sale, 119 Iowa 1, 92 N. W. 680, 95 N. W. 193; State v. Graham, 61 Iowa 608, 16 N. W. 743.

III. In instruction No. 5, the court defined manslaughter as the unlawful killing of a human being without malice, express or implied, and without deliberation, as upon a sudden quarrel or upon sudden adequate uncontrollable provocation. The objection to the instruction refers to the words "upon a

sudden quarrel or upon a sudden uncontrollable provocation''. Defendant states:

"It is evident that they (the jury) thought those words referred to this particular case. To thus add that instruction as an illustration in this case, was to in effect call undue attention of the jury to the very situation involved in this particular case and to have thus tended to lead them to believe that this particular case was in fact 'Manslaughter'. Said instruction was therefore unduly and highly prejudicial to this defendant.''

The instruction is not subject to the complaint made against it. The court first defined "manslaughter" and then gave the jury two illustrations of the crime, which, under the evidence, were favorable rather than prejudicial to defendant. The instruction does not directly or indirectly tell the jury that the defendant killed Carder upon a sudden quarrel or upon sudden provocation. It leaves to the jury to determine, under its guidance, whether or not the defendant was guilty of the crime.

IV. In instruction 5 on self-defense, the court stated that:

"If you shall find from the evidence in this case that just before the defendant killed Alva Carder, he had been unlawfully assaulted, or was threatened with an assault by the said Alva Carder, and that from the character of said assault or threatened assault, and the weapon used, he had reason, as an ordinarily prudent and *courageous* man, to believe, and did in good faith and honestly believe, that he was in danger of being killed, or of suffering great bodily injury,'' etc.

The instruction also stated that the defendant had the right to "use such force and means to defend himself as may in good faith appear necessary to him as an ordinarily prudent and *courageous* man under all the circumstances at the time surrounding him.''

Defendant asserts that the use of the word *"courageous"* constitutes reversible error, citing State v. Sipes, 202 Iowa 173, 185, 209 N. W. 458, 463, 47 A. L. R. 407.

The Sipes case, supra, did not reverse because of the use of the word *"courageous."* The court states:

"Complaint is made about the use of the word 'courageous.'

18

The word should have been omitted. The term ordinarily used under such circumstances is 'ordinarily prudent and cautious man.' "

■ To justify or excuse the killing of another in self-defense, the defendant must have a reasonable fear or apprehension that he is in danger of being killed or receiving great bodily injury and must have reasonable grounds for such apprehension. The quality of courage is inherently involved in the test of the reasonableness of defendant's fear. The honest belief of a timid man that he is in danger of being killed and that it is necessary to kill to save his own life is manifestly not a safe test or standard of justification or excuse; nor should the defendant be held to the high standard of what a very brave man would judge and believe to be a situation of great danger. To require a defendant to estimate his danger, as an ordinarily courageous man would estimate the danger under all the circumstances, is a safe, reasonable standard.

The words "prudent" and "cautious" are synonyms. This court has often approved the use of the phrase "an ordinarily prudent and courageous man" in an instruction on self-defense. State v. Crawford, 66 Iowa 318, 321, 23 N. W. 684, 685; State v. Dyer, 147 Iowa 217, 124 N. W. 629, 27 L. R. A. (N. S.) 459; State v. Thomas, 172 Iowa 485, 154 N. W. 768; State v. Shannon, 214 Iowa 1093, 243 N. W. 507; State v. Baker, 157 Iowa 126, 140, 135 N. W. 1097, 138 N. W. 841. The instruction given is correct.

■ V. Instruction 7 is an accurate statement of the law of self-defense. In this instruction the court stated that:

"Where one is assaulted or threatened with an assault by another, in such manner as to induce the person assaulted, or threatened with an assault, to reasonably believe that he is at the time in actual danger of losing his life, or of suffering great bodily harm, *he is justified in defending himself* although the danger be not real, but only apparent. * * * . But before one is *justified in taking life* in self-defense, it must be, or it must reasonably appear to be, the only means of saving one's own life, or of preventing great bodily injury," etc. (Italics supplied.)

Defendant complains of the use of the phrases "he is justi-

fied in defending himself" and is "justified in taking life", alleging that it "impliedly places the burden of proof on the defendant to justify his actions". We do not agree with this contention. At the close of the instruction the court told the jury that:

"You will remember that the burden is upon the state to prove by the evidence and beyond a reasonable doubt that in doing what he did, he was not acting in self-defense."

The instruction explained the doctrine of and elements constituting self-defense. If one person kills another in self-defense it is justifiable or excusable homicide.

In pleading self-defense, a defendant confesses the killing and seeks to justify the act as lawful. The court told the jury the circumstances under which a defendant would be justified in defending himself to the extent of taking the life of his assailant, and that the burden was on the state to prove the defendant was not acting in self-defense. It would be difficult to explain the doctrine of self-defense without the use of the word "justify" or "excuse" or a word of like meaning. To sustain his contention, defendant cites State v. Sipes, 202 Iowa 173, 209 N. W. 458, 47 A. L. R. 407; State v. Comer, 198 Iowa 740, 200 N. W. 185; State v. Smith, 194 Iowa 639, 190 N. W. 27; State v. McCausland, 137 Iowa 354, 113 N. W. 852; State v. Phillips, 118 Iowa 660, 92 N. W. 876. In these cases the court criticized the use of the phrase "to justify an acquittal" in the following clause in an instruction on reasonable doubt:

" 'A doubt to justify an acquittal must be reasonable and arise from a candid and impartial consideration of all the evidence in the case.' " [137 Iowa 356, 113 N. W. 853.]

The case of State v. Phillips, 118 Iowa 660, 675, 92 N. W. 876, 881, mildly criticises the phrase in the following language:

"In the opinion of some members of the court, the expression, 'to justify an acquittal,' though it has the support of precedent, is unfortunate, and should be avoided, as being open to the interpretation that the jury starts with the primary obligation to convict the accused unless some reasonable doubt arises to justify a verdict of not guilty. Such meaning is, of course,

not intended, and we may reasonably assume that the clause, when read as a part of the entire paragraph, is not prejudicial.''

In the case of State v. McCausland, supra, [137 Iowa 356, 113 N. W. 853], the court, in referring to the phrase ''to justify an acquittal'' states:

''It is to be conceded that upon one or two occasions this court has been inclined to disapprove of the quoted phrase as being liable to misinterpretation by the jury. State v. Phillips, 118 Iowa [660] 675, 92 N. W. 876. In the cited case, while criticising the language, we refused to reverse on that account because of the general tenor and effect of the court's charge. So, also, in the case now being considered, the charge as a whole was carefully framed to protect the accused in his legal rights, and, while we should have been better satisfied had the use of the quoted phrase been avoided, it does not afford sufficient ground for ordering a new trial.''

None of the above cases cited by defendant reversed because of the use of said phrase in an instruction on reasonable doubt, possibly because the reason given for the criticism by some members of the court in State v. Phillips, supra, is not persuasive. The usual instruction on reasonable doubt first states that ''if there is a reasonable doubt of the defendant being proved guilty he must be *acquitted*. In criminal cases, full and satisfactory proof of guilt is required. No mere weight of evidence will warrant a conviction, unless it be so strong and satisfactory as to remove from your minds all reasonable doubt of guilt of the accused.'' The words, ''a doubt, to justify an acquittal, must be reasonable, and arise from a candid and impartial consideration of all the evidence in the case'', only amplify and clarify the prior statements in the instruction relative to the reasonable doubt of the guilt of the defendant that requires his acquittal.

We are inclined to agree with the statement in the Phillips case that ''we may reasonably assume that the clause, when read as a part of the entire paragraph, is not prejudicial.''

The phrase ''to justify an acquittal'', which is in common use by the district judges, has been approved in several of our cases. See State v. Pierce, 65 Iowa 85, 21 N. W. 195; State v.

Elsham, 70 Iowa 531, 31 N. W. 66; State v. Leeper, 198 Iowa 83, 199 N. W. 341.

However, it is manifest that the reason given for the criticism of the word "justify" in an instruction on reasonable doubt is not applicable to its use in an instruction on self-defense.

The instruction did not place the burden of proof on defendant to establish self-defense but defined the doctrine of self-defense and explained the circumstances under which a defendant may take life in self-defense for the guidance of the jury in determining whether the state had established beyond a reasonable doubt that defendant was not acting in self-defense.

[9] VI.  Section 13918, Code, reads:

"13918.  Reasonable doubt as to degree.  Where there is a reasonable doubt of the degree of the offense of which the defendant is proven to be guilty, he shall only be convicted of the lower degree."

In compliance with this section the court, in instructions 8, 9 and 10, defined first and second degree murder and manslaughter and stated in substance that the jury should first consider whether defendant was guilty of first degree murder, and if it had a reasonable doubt that he was guilty of this crime it should then consider whether he was guilty of the included offenses, and that defendant could not be convicted of the lesser crimes unless his guilt was established beyond a reasonable doubt. The court then gave instruction 11 which is in the following language:

"11.  As you have been told, the defendant may be convicted of murder in the first degree, or murder in the second degree, or manslaughter, or he may be found not guilty.  This does not mean that you are at liberty to convict or acquit at pleasure. *The fact that you have the power to return a verdict finding a lesser crime or an acquittal is, alone, no excuse for using such power.  A lower conviction or an acquittal should not rest on the notion that you can do as you please, arbitrarily,* but your verdict should rest upon a fair, just and dispassionate consideration of the facts in evidence, under the instructions of the court, and with due and proper regard for your oaths as jurors."  (Italics ours.)

Defendant complains of the italicized portion of instruction 11 asserting that it constitutes "a warning to the jury not to arbitrarily find the defendant guilty of a lesser crime or an acquittal, placing the emphasis particularly on those, therefore impliedly to find him guilty of a greater crime." The instruction is not vulnerable to the charge that it impliedly directs the jury to return a verdict of first degree murder. The court first told the jury it was not at liberty to *convict or acquit* at pleasure and that the verdict must rest on the evidence and the instructions.

In telling the jury that it should not return a verdict for a lesser crime than first degree murder arbitrarily and solely because it had the power to do so, the court called its attention to the prior instructions that it must first determine whether it found defendant guilty of first degree murder beyond a reasonable doubt, and only in case it did not so find could it consider his guilt of the included offenses.

Instructions 8, 9 and 10, when read together, are necessarily somewhat complex. Manifestly, the purpose of the court in giving this cautionary instruction was to clarify the said prior instructions especially in regard to its right to convict of an included offense.

Instruction 11 when read with 8, 9 and 10 is explanatory of and in harmony with them and obviously did not mislead the jury in the manner claimed by defendant because it returned a verdict of manslaughter. We find no circumstances in the record that indicate that the instruction might have exercised a "coercive" influence on the jury. See State v. Coleman, 226 Iowa 968, 285 N. W. 269.

VII. Instruction 14 is on the question of the intent of the defendant and stated that "in determining the intent of the defendant, you have a right to infer or presume he intended to do that which he voluntarily did, and that he intended the probable and natural results to follow his acts deliberately and intentionally done, and which ordinarily follow such acts." Defendant objects to the following sentence in the instruction:

"If a person makes a wrongful assault on another with a deadly weapon such as a pistol, and death ensues from the shot fired therefrom, the inference is warranted that he intended to

commit murder in the absence of evidence that he intended a lesser injury.''

Defendant claims that the instruction fails to call the attention of the jury to his plea of self-defense and that the words ''unless you find he acted in self-defense'' should be added to said sentence. Prior to giving this instruction, the court had fully and correctly instructed the jury on defendant's plea of self-defense and had repeatedly stated in the instructions that if the jury found that he killed Carder in self-defense it should return a verdict of not guilty and that it would consider whether defendant was guilty of murder or manslaughter only in case the defendant was not acting in self-defense. The phrase ''if the person makes a *wrongful* assault with a deadly weapon'' assumes, in harmony with the prior instructions, that the jury has found that the defendant was not acting in self-defense.

We do not approve of the clause quoted from the instruction but hold that it is not subject to the exception made to it.

VIII. Defendant claims that the court erred in refusing to give requested instruction No. 4, the material part of which reads:

''If you find that Alva Carder attacked the defendant and was killed by one of five successive shots, defendant is not guilty if the fatal shot was fired while acting in self-defense although the defendant continued firing as the result of heat of blood, and passion caused by the assault. (State v. Linhoff, 121 Iowa 632, 97 N. W. 77.)''

In his argument in support of this assignment, defendant claims the court's instructions did not cover the right of defendant to continue firing the revolver at Carder after the *first shot* was actually shot in self-defense. He states: ''In the instant case the defendant fired five shots, all of which struck Alva Carder. The first bullet fired was the fatal bullet. In view of this fact the jury might get the impression that the defendant was not justified in firing all five shots.''

Defendant's statement that the first bullet fired was the fatal bullet is not supported by the evidence which shows that there were two bullets that could have caused the death of Carder and there is no evidence that these bullets were the first bullets fired. The fatal bullets may have been the last two

bullets fired. This question being conjectural, there was no evidence that would justify a finding that defendant continued firing after. Carder received a mortal wound. .

Defendant admits he fired five shots into the body of Carder and that at least one of the bullets caused his death. The trial court was right in refusing, as requested, to submit to the jury the question of whether Carder was killed by one of the bullets and in refusing to submit, in the instruction on self-defense, the speculative theory that the first bullet killed Carder and that defendant continued firing.

The court repeatedly told the jury that defendant was not guilty of the crime charged or the included offenses if he killed in self-defense. The instruction on self-defense fairly submitted to the jury the question whether defendant was justified in firing all five shots in self-defense which defendant testified were "fired about all at once". The instruction told the jury that the defendant could "use such force and means to defend himself as may, in good faith, appear necessary to him as an ordinarily prudent and courageous man, under all the circumstances at the time surrounding him and he is not bound to draw nice calculations from appearances." The court also instructed the jury "and if you shall find that he did not use greater force, or more hazardous means, to protect his life and person than really appeared to him necessary as an ordinarily prudent and courageous man under the circumstances in which he was then placed, including the nature and manner of the assault, or threatened assault, then and in that case the killing was not unlawful, and you should return a verdict of not guilty."

These instructions could only refer to the use of the gun and the firing of the five shots by defendant which he alleged were done in self-defense. There was no error in refusing the requested instruction.

In the case of State v. Linhoff, 121 Iowa 632, 97 N.W. 77, cited by defendant, the defendant fired five shots, and there was evidence that the third shot killed deceased. The question of retreat by deceased was involved in the case. The instruction, to which exception was taken, was on manslaughter. The instruction stated:

If she "continued to shoot under the influence of heat of

blood and passion caused by such an assault and conflict, she . would only be guilty of manslaughter.''

The court held the instruction was erroneous because it did not take into consideration when the fatal shot was fired.

In referring to the instruction, the court states that it was ''without reference to whether the fatal shot was fired before or after Bromley abandoned the attack. If the shot which in- · flicted the wound was fired before Bromley retreated, then it was entirely immaterial how many shots were fired afterwards. Defendant should not be convicted because she fired ineffectively after her assailant had retreated. Careful analysis of the instruction in the light of the evidence adduced, which tended to show that it was the third shot which took effect, leads us to the conclusion that it cannot be sustained.'' The Linhoff case, supra, is not applicable here because the facts and errors considered are essentially different than in the instant case.

We have examined other exceptions to instructions and find that they are not of sufficient merit or importance to warrant discussion. Finding no error, the case is affirmed.— Affirmed.

MITCHELL, C. J., and HALE, BLISS, OLIVER, and MILLER, JJ., concur.