STATE OF IOWA, Appellee, v. ALBERT A. BRACKEY, Appellant.

**ASSAULT AND BATTERY: Great Bodily Injury—Intent—Aggression—Evidence.** Evidence reviewed and held sufficient to support a finding that defendant (a) was the aggressor and (b) assaulted with intent to inflict a more serious injury than an ordinary battery,—in other words, a great bodily injury.

**INDICTMENT AND INFORMATION: Assault With Intent—Manner of Assault—Sufficiency.** The *manner* in which and the *means* by which the accused intended to commit an assault with intent to inflict a great bodily injury are sufficiently alleged by the charge that the accused did then and there "beat, strike and bruise" the prosecuting witness.

**CRIMINAL LAW: Evidence—Opinion—Manner of Inflicting Wound.** A physician who has personal knowledge of the nature of the wound inflicted may testify that such wound was, in his opinion, inflicted by a certain instrument,—for instance, some dull instrument.

**CRIMINAL LAW: Evidence—Opinion—Usurping Function of Jury.** A question which calls for an answer on the ultimate question which the jury must determine, is properly excluded. So *held* where the defendant, charged with assault with intent to inflict great bodily injury, was not permitted to testify "whether he used any more force on the prosecuting witness than was necessary to protect himself."

**ASSAULT AND BATTERY: Great Bodily Injury—Weapons—Fists Only.** One may commit with his fists only an assault with intent to inflict a great bodily injury.

**ASSAULT AND BATTERY: Great Bodily Injury—Self-Defense—Instruction—Harmless Error.** Submitting the question whether defendant, charged with assault with intent to inflict great bodily injury, apprehended danger of great bodily harm from the prosecuting witness, and correctly advising the jury of the law of self-defense manifestly accords defendant full protection, especially where the record rendered it doubtful whether defendant had any occasion to apprehend danger of great bodily harm from the prosecuting witness.

**CRIMINAL LAW: Self-Defense—Right to Meet Force With Force.** A person assaulted may always meet force with force, but no more than a battery may be inflicted unless this seems to be necessary to protect life or body from great harm, and not then if the as-

sailed party have reasonable opportunity to withdraw and avoid the conflict, and it so appears to him as a reasonable person.

*Appeal from Winnebago District Court.*—M. F. EDWARDS, Judge.

### FRIDAY, APRIL 7, 1916.

THE defendant was convicted of having committed assault with intent to inflict great bodily injury, and appeals.— *Affirmed.*

*T. A. Kingland,* for appellant.

*George Cosson,* Attorney General, and *John Fletcher,* Assistant Attorney General, for the State.

LADD, J.—I. Bertha Brackey became 12 years old Sunday, August 2, 1914. The event was celebrated by a birthday party, to which all the Brackeys in the neighborhood, and some others, were invited. Liquid refreshments were served, as was customary with them, and, late in the afternoon, began to work. Tom Haugo pushed, or threw, his sister, the host's wife, to the ground. Turana Brackey, a sister-in-law of the latter, told Tom to be good, and her husband, Albert A. Brackey, the accused, came up and inquired, "Is that right to hit her?" and seized him by the throat. Albert's sister, Mrs. Dollan, told him to let go, but he would not, and she called for help. When her son Alf came, Albert knocked him down, and would not withdraw until she came at him with a board. Albert thought he might have "bumped" Alf, but explained that all the Dollans "climbed right on top" of him. Anyway, all agreed that he then retreated to the house, as his brother, Talleck, called for help, and kept the attacking party at bay while Talleck searched the house for munitions of war.

"There was Talleck Dollan, he had kind of a 2x4, or else a post, in his hand, about two feet long, and then Mrs. Dollan had a board, and Tom Haugo was with them too and had a piece of a bed post from an old bed."

*(Margin note: 1. ASSAULT AND BATTERY: great bodily injury: intent: aggression: evidence.)*

Alf also was there. Albert was scared, and called on
Gunder Weeks for help. But Gunder's discretion got the
better part of his valor, and, after a slight advance, he
retreated in good order to a place of safety; but Albert
denounced him as a coward. Haugo got kicked when sneak-
ing up on Albert, and then the Dollans untied their team and
drove with their surrey towards the gate. On the way, they
threatened his life. Nevertheless, he "walked just a little ways
down that way." The buggy stopped and Dollan got out,
and, according to Albert, said, "If there is any good man or
stout man back there that thinks he's anything, come on and
I'll fix him." Albert admitted fear of no one other than Mrs.
Dollan, "walked with nothing in his hands," and, as "Dollan
was coming towards him and" made a motion to hit him and
"all were coming for" him, he "grabbed him and took him
down, and was looking for the others too," and when he "saw
them crowding out of the buggy . . . . gave him some." He
"hit him with my hands." He "thought" he "would scare
them a little and make them go on," and he "got a little board
and hit in the buggy top, and told them to go along." This
was somewhat corroborated by his son and his wife, though
the latter, as her husband approached his foe, turned her face
away. But Alf swore that Albert "had a board in his hand;"
that he "saw him going behind father" and that he "raised
the board and struck him;" that his father "had then just
gotten out of the buggy," and he "couldn't see just where it
hit;" and that Albert struck at him. Dollan testified that,
when out of the buggy, he "saw Albert coming toward" him;
that then something hit him; that it happened so quickly that
he did not notice what it was; that he saw he had a board;
but did not see him hit with a board. Mrs. Dollan looked
back as her husband left the buggy, and saw Albert "come
running just behind her husband with a board in his hand;"
and says that he first struck her husband with the board, and
her husband fell to the ground; that he then used his fists.
The physician who dressed Dollan's wound stated that there

were three wounds, one in the right temple about 1¼ inches long, extending through the tissues to the thin lining of the bone, another over the left eye, and the third in the eyebrow. The last two were not quite as deep as the one in the temple, and he expressed the opinion that the wounds were produced by some blunt instrument. From this evidence, the jury might have concluded that defendant was the aggressor; that he struck Dollan on the head with a board; and that, in doing so, he intended to inflict a more serious injury than an ordinary battery. The evidence was such as to preclude interference with the verdict.

II. The indictment was like that approved in *State v. Cummings,* 128 Iowa 522, and *State v. Carpenter,* 23 Iowa 506, and met requirements of *State v. Mitchell,* 139 Iowa 455, by alleging the manner in which and the means by which the accused intended to commit the wrong, i. e., by beating, striking and bruising Dollan. The demurrer thereto was rightly overruled.

2. INDICTMENT AND INFORMATION: assault with intent: manner of assault: sufficiency.

III. After describing the wounds, Dr. Helgeson was asked, "Could you tell from the wounds themselves as to how they had been produced, in a general way?" Over objection, the witness answered, "They were produced by some blunt weapon or instrument, whatever it may have been—something that wasn't sharp." The ruling was correct. *State v. Hessenius,* 165 Iowa 415.

3. CRIMINAL LAW: evidence: opinion: manner of inflicting wound.

The defendant was asked whether he used "any more force on Talleck Dollan than was necessary to protect himself." The answer was stricken, for that the question called for the conclusion of the witness, and was a matter for the determination of the jury. The ruling has our approval. It was for the jury to say, from the evidence of what was in fact done, whether excessive force was used. This was not a proper subject for opinion evidence. The witness was then

4. CRIMINAL LAW: evidence: opinion: usurping function of jury.

asked what he expected when Dollan got out of the buggy. An objection was sustained; but the witness afterwards testified that he "thought they were coming back to put up a fight right there." The subsequent answer removed all ground for complaint of the ruling.

IV. Appellant suggests that a person may not be guilty of an assault with intent to inflict great bodily injury unless he has other weapons than his fists. That this is not so appears from *State v. Sayles*, 173 Iowa 374, where

5. ASSAULT AND BATTERY: great bodily injury: weapons: fists only.

death resulted from a blow from the fist. The instructions requested were included in those given, in so far as they correctly state the law.

It may be doubted whether the defendant, as an ordinarily prudent man, had the right to apprehend danger of great bodily harm from Dollan; but surely the submission in the 11th instruction of whether he did so

6. ASSAULT AND BATTERY: great bodily injury: self-defense: instruction: harmless error.

apprehend, and advising the jury of the law of self-defense and of the duty to retreat if it seemed possible, to avoid inflicting great bodily harm, could not have been prejudicial.

A person assaulted may always meet force with force, but no more than a battery may be administered unless this seems to be necessary to protect life or body from harm, and not then if the assailed party have reasonable

7. CRIMINAL LAW: self-defense: right to meet force with force.

opportunity to withdraw and avoid the conflict, and it so appears to him, acting as an ordinarily prudent person. *State v. Goering*, 106 Iowa 636; *State v. Evenson*, 122 Iowa 88. The instruction was in harmony with the rule as stated, and the jury was warranted in finding that defendant was not acting in self-defense, and that, on any theory of the case, the force exerted was excessive and inexcusable. Too much alcohol and water for a birthday party! Exceptions to other instructions are hypercritical and require no attention.—*Affirmed.*

EVANS, C. J., GAYNOR and SALINGER, JJ., concur.