STATE OF IOWA, Appellee, v. JOE GOUGH, Appellant.

CRIMINAL LAW: Trial—Instructions—Province of Court. Where 1 the evidence in a criminal trial is such that any particular

state of facts may reasonably be found by the jury to exist, it is not the province of the court to assume what the jury's findings will be upon any phase of the case, and it is the court's duty, in a case of that kind, to tell the jury what the legal rights and duties of the parties are, under such conditions.

HOMICIDE:    Excusable or Justifiable—Self-Defense—Duty to Re-
2    treat.   Where the defendant and deceased both had a right to be in a place where they were when the encounter took place, their rights were equal, and neither was required to flee from the threatened assault, and either might use such force as appeared reasonably necessary to defend his person from assault, the duty to retreat coming only when the resistance cannot be made effectual without resorting to extreme measures, involving the life of the assailant.

*Appeal from Des Moines District Court.*—OSCAR HALE,
Judge.

OCTOBER 16, 1919.

DEFENDANT was indicted for murder in the first degree, convicted of manslaughter, and appeals.—*Reversed.*

*J. C. McCoid* and *W. F. Kopp,* for appellant.

*H. M. Havner,* Attorney General, for appellee.

GAYNOR, J.—Defendant is accused of murder in the first degree, in the killing of one Abe Platt, on November 29, 1917. He was tried to a jury, and convicted of manslaughter, and appeals.

A brief statement of the facts is necessary to a proper understanding of the error upon which reversal is predicated. The defendant and deceased, at the time of the homicide, were both in the employ of one Z. T. Noble, a farmer. The killing took place in Noble's sitting room, at 10 o'clock at night, on November 29, 1917. On the evening of the encounter, the defendant and his employer, Noble, were sitting in the room, talking over some matter relating to the farm. The deceased had gone upstairs, whether to bed

or not does not definitely appear. Noble was very deaf, and the conversation between defendant and Noble was necessarily carried on in a very loud voice. Whether deceased overheard the conversation is not made known to us. Deceased, however, came from his room down to the parlor where defendant and Noble were sitting. Thereupon, the defendant and deceased got into a verbal controversy, touching the subject-matter under discussion between Noble and the defendant, and some harsh language passed between them. There is controversy in the evidence as to which spoke first, and just when the speaking took place that provoked the physical encounter. The jury could well find that deceased threatened to do violence to defendant before the encounter, and followed this by attempted violence. Defendant was sitting in the room near the west door. The deceased, on entering the room, seated himself on a lounge at the east side of the room. The room was not a large room, about 14 feet across. The jury could well find that the deceased was the aggressor; that he arose from his seat, approached the defendant with threatening language and in a threatening manner, struck at the defendant, and administered one blow which brought the defendant to his knees. While in this attitude, he got the defendant by the throat, and while so held, defendant took a pocket knife from his pocket and cut the deceased. These facts could have been found by the jury substantially as we have stated them. At the time the assault was threatened, and at the time the assault was begun, neither party had any deadly weapons exposed to view. The defendant was sitting near the west door, and could, if the instincts of cowardice controlled, have escaped immediately through the door, and avoided any physical encounter with the deceased. He could have fled immediately upon the threat. He could have fled when the deceased arose to his feet and started to approach him. He could possibly, with safety,

have fled through the door when the deceased first struck at him. The question presents itself: At what time did a legal duty rest upon the defendant to retreat from the attack?

It is not the province of the court to assume what the findings of the jury will be upon any phase of the case. When the evidence is such that any particular state of facts may reasonably be found by the jury to exist, it is the duty of the court, in a case of this kind, to tell the jury what the legal rights and duties of the parties are, under such conditions. Reversal is sought upon error alleged to have been committed by the court in the 14th and 15th instructions. These instructions relate to the duty of the defendant to retreat and avoid the encounter. This presents the inquiries: When does the duty of the defendant to retreat arise; how long may he stand his ground before retreating; whether he has a right to stand his ground and defend himself against the threatened assault; what he may do in the way of self-defense, before retreating? In other words, when must he flee from the wrath of his opponent? The court, in the twelfth instruction, told the jury:

1. CRIMINAL LAW: trial: instruc tions: province of court.

2. HOMICIDE: excusable or justifiable: self-defense: duty to retreat.

"It is claimed on the part of the defendant that, in the transaction in controversy in this cause, the defendant acted in what is legally termed self-defense. * * * Under the law, a person who is assaulted or threatened by another is justified in using such force as is actually necessary, or such as, under the circumstances, he has reasonable ground to believe necessary, to repel such threatened attack, and prevent serious bodily harm to himself; but a threatened attack will not warrant the party threatened in the use of any more force than he has reasonable ground,

as a person of ordinary prudence, to believe necessary to protect himself from serious bodily injury."

In the fourteenth instruction the court said:

"While the defendant had the right  *  *  *  if assaulted by the deceased, to employ such force as reasonably appeared necessary at the time to repel such assault and to protect his own person from serious harm, even to the extent of taking the life of the deceased, *yet it was at the time the duty of the defendant to avoid the use of force, if it appeared reasonably possible to do so without great personal peril to himself.*  *  *  *  And if the jury find from the evidence beyond a reasonable doubt that defendant, when *assaulted* or *threatened* with *assault*  *  *  *  could have avoided his attack without subjecting himself to danger of serious bodily harm at his hands  *  *  *  and if injury from such *threatened assault* could have been avoided by retreat from the attack of the deceased, you should then find that it was the *duty of the defendant to effect such retreat,* and thereby avoid injury to himself and the necessity of employing force against the deceased. And if he failed to do so and unnecessarily resisted the assault of the deceased, and in so doing took his life  *  *  *  you should then find that he is responsible for such act, and cannot under such circumstances avail himself of the plea of self-defense."

The jury could fairly understand from these instructions that, while the defendant had the right to defend himself, when threatened and when assaulted, this right was not available while there remained an avenue of escape, and that it was the duty of the defendant to retreat through this west door, immediately upon being threatened with the assault, even though the right of self-defense existed; that he could not, at any stage of the proceeding, avail himself of the right of self-defense, while there re-

mained open to him an avenue of escape from the threatened assault. The effect of this instruction is to say that, where one is threatened with an assault, or assault and battery, it is his duty to flee, if he can do so with safety to himself; that, if he does not flee, but stands his ground, and repels force by force, and a point is reached in the defense when it becomes reasonably necessary for him to use extreme force in order to protect his life, though there is then no avenue of escape, he cannot avail himself of self-defense if, peradventure, he could have escaped before the assault commenced. It will be borne in mind that both parties had a right to be in the place where they were at the time the encounter took place. Neither had the exclusive right to the premises. Their rights were equal. Neither was required to retreat or flee from a threatened assault. Either might stand his ground and protect himself against the assault, and use such force as to him appeared reasonably necessary to defend his person from the assault. The duty to retreat, the duty to flee from the assault, comes only when the resistance cannot be made effectual without resorting to extreme measures, involving the life or limb of the assailant.

As said in *State v. Brackey*, 175 Iowa 599, 603:

"A person assaulted may always meet force with force, but no more than a battery may be administered unless this seems to be necessary to protect life or body from harm, and not then if the assailed party have reasonable opportunity to withdraw and avoid the conflict, and it so appears to him, acting as an ordinarily prudent man."

There is evidence in this case that the defendant had a reasonable opportunity to flee, just before the assault was begun, but this he was not required to do. He could meet force with force, and could use such force as appeared reasonably necessary to protect himself and subdue his assailant. But before he resorted to the use of a deadly weap-

on, or inflicted great injury on his assailant, he must re-
treat, if retreat were then open to him, and he could do so
with safety.

We think the court erred in this instruction, to the
prejudice of the defendant.   Our holding has support in
prior decisions of this court.   *State v. Evenson,* 122 Iowa
88, approved in *State v. Dyer,* 147 Iowa 217, 221; *State v.
Brackey,* 175 Iowa 599; *State v. Stansberry,* 182 Iowa 908,
910.

Some complaint is made of the court in permitting evi-
dence of declarations made by the defendant, some time
prior to the homicide.   While, as a general proposition, the
contention of the defendant against the admission of this
evidence is right, yet, in the light of the conditions devel-
oped in this case, and the relationship existing between the
parties, it was for the jury to say whether or not the re-
mark complained of had relationship to the deceased.   It
was permitted for the purpose of showing the mental at-
titude of the defendant towards the deceased.   Whether it
tended to make such a showing or not, we are not prepared
to say; but, in view of all the circumstances, it was a fair
question for the jury as to whether the remark had bear-
ing upon the mental attitude of the defendant towards the
deceased.

For the error pointed out in giving the instructions,
the case must be and is—*Reversed.*

LADD, C. J., WEAVER and STEVENS, JJ., concur.