STATE OF IOWA, Appellee, v. LEWIS PILLSBURY, Appellant.

CRIMINAL LAW: Evidence—Opinion Evidence—Usurping Jury Function. A physician may not, on the basis of a physical examination of the prosecutrix in a charge of assault with intent to rape, express the opinion that someone had attempted to have sexual intercourse with prosecutrix.

*Appeal from Mills District Court.*—EARL PETERS, Judge.

MARCH 13, 1923.

DEFENDANT was convicted of the crime of assault with intent to commit rape, and sentence was pronounced on the verdict. Defendant appeals.—*Reversed and remanded*.

*W. S. Lewis* and *D. E. Whitefield,* for appellant.

*Ben J. Gibson,* Attorney-general, and *C. H. Cook,* County Attorney, for appellee.

ARTHUR, J.—The indictment charged the defendant with the crime of rape. At the conclusion of the evidence for the State, the trial court withdrew from the consideration of the jury the charge of rape, and submitted to the jury the included offenses of assault with intent to commit rape and simple assault. At the conclusion of the State's evidence, defendant moved for a directed verdict in his favor, which motion was overruled. The jury returned a verdict finding the defendant guilty of assault with intent to commit rape. Defendant then filed a motion in arrest of judgment and for a new trial, which motion was overruled. Judgment was entered against defendant, committing him to the penitentiary at Fort Madison for an indeterminate period not exceeding 20 years, from which judgment this appeal is prosecuted. Defendant assigns several errors in the trial and submission of the case to the jury, on which he relies for reversal. A brief statement may be made, as follows:

Defendant was charged with committing the crime of rape upon his own daughter, Lucille Pillsbury, a child 11 years old, who, at the time, was living with her father in the town of Malvern, Iowa, together with a housekeeper, Mrs. Emma Pabst, a daughter of Mrs. Pabst's, Lola Pillsbury, the sister of prosecutrix, and a brother of the defendant's, C. C. Pillsbury. The wife of defendant and mother of Lucille and Lola had died a year or two before the time involved in this case. The prosecuting witness, Lucille Pillsbury, had been sleeping with her sister Lola, prior to some time in the fore part of December, 1921. Lola was a girl 10 years old. Lucille and Lola had some trouble, and about the first of December, Lucille went upstairs to sleep with her father, and continued to sleep with her father, defendant, up to and including the night of December 28th, when the assault charged is claimed by the State to have taken place, when she ceased to sleep with him.

For the purpose of considering errors assigned to the admission of portions of the testimony of the prosecuting witness, Lucille Pillsbury, and Drs. Scott and Caughlin, called by the State, we set forth the testimony of such witnesses.

I. Lucille testified that she remembered the night of December 28th, which was on the Thursday following Christmas; that, prior to December 28th, for about one month, she had

been sleeping with her father upstairs, and that during that time no one else slept with her; that, on the night of December 29th, she slept in another room upstairs by herself; that she did not want her father to do what he had been doing. She further testified that she went to bed first on the night of December 28th, and when her father came to bed with her, he unbuttoned her underwear and pulled her over on top of him and tried to have sexual intercourse with her. In answer to a leading question, to which apt objection was made, she stated a particular act done to her by her father; that she had been sleeping with her father every night for about a month prior to this time; that prior to this time her father had handled her indecently; but that on this night was the first time he had ever unbuttoned her clothes and attempted intercourse; that she told Mrs. Pabst, the housekeeper, of the occurrence, on the night of December 30th; that she had a kind of a stomach ache down below; that she was examined by Dr. Scott on Sunday and by Dr. Caughlin on Monday; that she complained of the occurrence to Mrs. Bertha Schutts; that she had gone to sleep with her father because her sister, Lola, with whom she had been sleeping, tickled her; that the night her father assaulted her, she had on winter underwear, buttoned up behind, and bloomers and a flannel nightgown.

Dr. J. R. Scott, a physician of 37 years' practice, called by the State, testified:

"I made an examination of the private parts of Lucille Pillsbury on January 1, 1922. At the time of this examination, she showed evidence of having been markedly mistreated. There was extreme tenderness across the lower part of the abdomen, and the private parts were very much swollen and inflamed and tender, and a good deal of redness of the parts. Q. From your examination, Doctor, the first day of January, I want you to give this jury your opinion as to whether or not someone, in your judgment, attempted and had had a partial intercourse with Lucille Pillsbury. (Objected to as incompetent and immaterial. Overruled. Defendant excepts.) A. I should judge from all the evidence and everything there had been an attempt, and possibly a partially successful attack. Q. Of what? A. Of intercourse, sexual intercourse. (Defendant moves to exclude

the answer, for the reason that it is not responsive, and too uncertain. Overruled, and defendant excepts). A. There was redness of the external parts, redness and congestion. There might be many ways how this could happen. I could not tell whether anybody had attempted to have sexual intercourse with that little girl from my examination. Well, in a way, it might be a guess, and, well,—more than a guess. It would be impossible to state whether anyone had had sexual intercourse with this little girl. I would say there was an attempted sexual intercourse. From the examination, I made up my mind there had been an attempt.''

Dr. G. V. Caughlin, a physician of 9 years' practice, called by the State, testified:

''I made an examination of Lucille Pillsbury on January 2, 1922. The vulva and vagina of this child showed considerable swelling and redness as a result of injury from some object. The hymen was ruptured. The hymen is the membrane which is situated at the entrance of the vagina, and in this case it had been broken, as though there had been some attempt made to enter the vagina.''

The witness was asked to state from his examination what his opinion was as to whether or not someone had attempted sexual intercourse with Lucille, and the doctor answered, over objection by defendant, ''I should say an attempt had been made.''

''Q. What would you say, as a matter of opinion, as to whether or not that attempt had been, partially at least, successful? (Objected to as incompetent, immaterial, and calling for a conclusion. Overruled.) A. Yes, sir.''

The witness testified, on cross-examination:

''The hymen had been ruptured. I mean by that, it had been broken, to some extent. That could happen without anybody attempting to have intercourse with a female, and often does. Q. So the mere fact of the hymen being ruptured does not indicate anything in the line of sexual intercourse? A. Well, I could answer this: that it had been ruptured. I could not say or would not say 'sexual intercourse.' ''

Witness further testified:

''The hymen can be ruptured, and is often ruptured, with-

out any attempted sexual intercourse. I should say there had been penetration, on account of the condition,—the swelling and redness and the tenderness. I do not believe that could all have been produced by violence outside of the vagina alone."

II. Appellant complains that the court erred in permitting the county attorney to ask the prosecuting witness, Lucille Pillsbury, a certain leading and direct question, over the objection of defendant. The question asked which was objected to was, in substance, whether her father did do a certain specific act. The court ruled: "It is leading, but it is overruled;" and the witness answered, "Yes, sir." The witness was a child, only 11 years old, and a certain amount of latitude is properly allowed in the examination of a child, under the sound discretion and guidance of the court. But in this case, the record does not disclose any reason for the leading question. It does not appear that the child showed any unwillingness or hesitancy to be ready with an answer to the question. In this particular case, we doubt the correctness of the ruling, but would not reverse on this specification of error.

III. Appellant assigns as error the ruling of the court in the examination of Dr. J. R. Scott, witness for the State. The county attorney propounded this question to Dr. Scott:

"Q. From your examination, Doctor, the first day of January, I want you to give this jury your opinion as to whether or not someone, in your judgment, attempted and had had a partial intercourse with Lucille Pillsbury."

Over proper objection, the witness answered:

"I should judge, from all the evidence and everything, there had been an attempt, and possibly a partially successful attack. Q. Of what? A. Of intercourse—sexual intercourse."

It was error to permit the doctor to give his opinion that the injury he found on the body of the child was caused by an attempted sexual intercourse. This same doctor, on cross-examination, testified:

"There might be many ways how this could happen. I could not tell whether anybody had attempted to have sexual intercourse with that little girl from my examination. Well, in a way, it might be a guess, and,—well,—more than a guess. It

would be impossible to state whether anyone had had sexual intercourse with this little girl."

Dr. Caughlin was asked by the prosecuting attorney to state, from his examination, what his opinion was as to whether or not someone had attempted sexual intercourse with Lucille, and the doctor answered, over proper objection, "I should say an attempt had been made." The doctor was then asked:

"What would you say, as a matter of opinion, as to whether or not that attempt had been, partially at least, successful?"

Over proper objection, the witness answered, "Yes, sir." Dr. Caughlin testified, on cross-examination:

"The hymen had been ruptured. I mean by that it had been broken, to some extent. That could happen without anybody attempting to have intercourse with a female, and often does. Q. So the mere fact of the hymen being ruptured does not indicate anything in the line of sexual intercourse? A. Well, I could answer this: that it had been ruptured. I could not say or would not say 'sexual intercourse.' The hymen can be ruptured, and is often ruptured, without any attempted sexual intercourse."

As appears from the testimony of the doctors, hereinbefore set forth, they made an examination of the private parts of the prosecuting witness, and testified to the conditions found, and properly so. These doctors might properly have been permitted, as experts, to testify as to what, in their opinion, may have caused or could have caused the injury which they found by their examination. But it was not competent for them to give their opinion as to the ultimate fact in issue: namely, whether the injury to Lucille had been caused by an attempted intercourse or partially successful attack of sexual intercourse. Such ultimate fact was for the jury to determine. The doctors were permitted to testify, in substance and effect, that the injury to Lucille found by them in their examination of her was caused, in their opinion, by an attempted sexual intercourse, or a partially successful attack of that kind. The ultimate fact which these doctors were permitted to testify to was not a particular fact peculiarly within their knowledge as experts. The ordinary juror would know that the injury found by the doctors could be produced otherwise than by sexual intercourse or attempted

sexual intercourse.  These doctors so stated in their testimony. *Martin v. Des Moines Edison Lt. Co.,* 131 Iowa 724; *State v. Hessenius,* 165 Iowa 415; *Kirby v. Chicago, R. I. & P. R. Co.,* 173 Iowa 144; *State v. Brackey,* 175 Iowa 599; *Brier v. Chicago, R. I. & P. R. Co.,* 183 Iowa 1212.  In *Martin v. Des Moines Edison Lt. Co.,* supra, we said:

"It is an accepted rule that, while experts may testify as to what, in their opinion, may or may not have been the cause of a given result or condition, it is not permissible for them to give their opinion as to the ultimate fact which the jury is organized to determine."

As the case must be reversed because of the errors above pointed out, it is unnecessary to discuss other errors assigned for reversal.  It is sufficient to say that we have taken up and considered all of the assignments, and find no error except as above pointed out.  The case must be and is—*Reversed and remanded.*

PRESTON, C. J., EVANS and FAVILLE, JJ., concur.