STATE OF IOWA, Appellee, v. ALBERT KORTH, Appellant.

**HOMICIDE:** Involuntary Manslaughter—Negligent Exposure of Poi-
1   soned Beverage. The act of a person in so negligently exposing a
    beverage which contains a narcotic in a deadly quantity as to be

consumed by another may constitute involuntary manslaughter, if the death of a human being results and the possession or use of such narcotic by the accused is unlawful. Evidence held insufficient to show that the accused placed the poison in the beverage in question or knew of its presence therein.

**INDICTMENT AND INFORMATION:** Sufficiency—Involuntary Manslaughter. An indictment for involuntary manslaughter must allege the *facts* which are relied on to constitute the offense.

**CRIMINAL LAW:** Evidence—Res Gestae. What a person said about being sick and dizzy within a very few minutes after he had unwittingly drunk a lethal dose of poison is part of the *res gestae*. (See Book of Anno., Vol. I, Sec. 13897, Anno. 37 *et seq.*)

**EVIDENCE:** Opinion Evidence—Cause of Death. A physician may, on a hypothetical question based on the testimony of other witnesses and on his own examination of the body of the deceased, give his opinion as to the cause of death.

Headnote 1: 29 C. J. p. 1157; 30 C. J. p. 317. Headnote 2: 30 C. J. p. 117. Headnote 3: 16 C. J. p. 577. Headnote 4: 16 C. J. p. 748.

Headnote 1: 61 L. R. A. 277; 13 R. C. L. 847, 858. Headnote 2: 14 R. C. L. 173. Headnote 4: L. R. A. 1915A, 1056.

*Appeal from Woodbury District Court.*—ROBERT H. MUNGER, Judge.

JANUARY 10, 1928.

The defendant was convicted of the crime of involuntary manslaughter. From a judgment imposing a fine of $3,000 and confinement in the reformatory at Anamosa for a term of eight years he appeals.—*Reversed.*

*Yeaman & Yeaman* and *Milchrist, Jepson, Marshall & Jepson,* for appellant.

*John Fletcher,* Attorney-general, *Neill Garrett,* Assistant Attorney-general, and *O. T. Naglestad,* County Attorney, for appellee.

STEVENS, C. J.— I. The facts will be fully stated in another division of this opinion.

A motion to quash the indictment was filed by the defendant

before the jury was sworn. Briefly stated, the grounds of the motion were that the indictment does not charge the crime of manslaughter, or any crime known to the laws of Iowa; that it charges more than one offense in a single count; that it is bad for duplicity; and that its language is not direct and certain, as required by law, but, on the contrary, ambiguous. The motion was overruled, a jury impaneled, and the case tried, with the result already stated.

1. HOMICIDE: involuntary manslaughter: negligent exposure of poisoned beverage.

The indictment, in substance, charged that the defendant knowingly, unlawfully, and feloniously, in a grossly negligent and reckless manner, caused morphine to be mixed with coffee, with the intent that the said coffee should be consumed as a beverage by some person to the grand jury unknown, and caused the same to be placed where it was obtained and drunk by one Louis Des Jarlais, so that his death resulted.

Negligence is further charged in the omission to label the bottle containing the liquid so as to indicate that it contained poison. The crime charged is involuntary manslaughter, which was defined by this court in *State v. Abarr*, 39 Iowa 185, as follows:

"Where a man doing an unlawful act, not amounting to a felony, by accident kills another, * * * this is called involuntary manslaughter."

We said in *State v. Warner*, 157 Iowa 111, that:

"Involuntary manslaughter may be committed in many ways, and the law is so solicitous of human life that it considers as unlawful all acts which are dangerous to the person against whom they are directed, and not justified by the occasion, no matter how innocently they may have been performed."

The offense is defined in 2 Brill's Cyclopedia Criminal Law, Section 666, as follows:

"Involuntary manslaughter is the unlawful killing of a human being unintentionally and without malice, express or implied, but in the commission of some unlawful act not amounting to a felony, or some lawful act in an unlawful or negligent manner. An intent to kill is not an essential element of the offense, and its absence distinguishes it from voluntary manslaughter."

The possession or control of narcotic drugs for any purpose,

unless obtained upon the original written prescription of a licensed physician, dentist, or veterinarian, who has registered under the Federal law regulating the traffic in narcotic drugs, is prohibited by the statute of this state. Section 3154, Code of 1924.

It is also unlawful for any person to deliver or give away any narcotic drug. Section 3152, Code of 1924. The defendant was not a registered pharmacist, nor a person authorized to have narcotic drugs in his possession, and the giving away thereof to any person by him would be a violation of the statute. Involuntary manslaughter may be committed in a great variety of ways, such as the careless and negligent handling of a loaded gun (*State v. Benham,* 23 Iowa 154; *State v. Hardie,* 47 Iowa 647; *State v. Vance,* 17 Iowa 138); the reckless, careless, and negligent operation of an automobile (*State v. Biewen,* 169 Iowa 256; *State v. Salmer,* 181 Iowa 280). That a common beverage such as coffee, containing a deadly quantity of morphine, might be so negligently placed or disposed of as to, if drunk with fatal results, constitute involuntary manslaughter, we entertain no doubt.

The indictment is not bad for duplicity or on any of the other grounds of the motion. An indictment charging involuntary manslaughter must, of course, allege the facts relied upon

2. INDICTMENT AND INFORMATION: sufficiency: involuntary manslaughter. to make out the offense. *State v. Decker & Sons,* 197 Iowa 41; *State v. Sexsmith,* 200 Iowa 1244. That is what is done in this case. The motion was properly overruled.

II. The sufficiency of the evidence to sustain the conviction, which was raised by motion to direct a verdict and by motion for a new trial and in arrest of judgment, is one of the principal grounds alleged by counsel for reversal. The evidence on the part of the State was brief. No evidence was introduced by the defendant.

It is the claim of the State that, about 1:30 A. M. on May 10, 1926, the defendant gave two packages, one consisting of two bottles of coffee, and the other of sandwiches, to Walter Magee, a messenger boy, with directions to deliver both packages to Dorothy Korth, his wife, who was confined at the police station about six blocks from the place where the packages were received. Magee was accompanied to the police station by an-

other messenger boy, by the name of Titus. The packages were tendered by Magee to a police officer, who declined to receive the same or to permit them to be given to Dorothy Korth. Magee and his companion then returned to the Western Union office, where they were employed, taking the packages with them. They were placed on a desk in the Western Union office. One of the bottles was taken by Louis Des Jarlais into an adjoining room, occupied as a shoe-shining parlor, and the contents drunk by him. Des Jarlais immediately returned to the Western Union office, bringing the empty bottle with him, and in answer to questions propounded to him, stated that he drank the coffee; that he felt dizzy, sick, and had a headache; and that the coffee did not taste very good. He then grabbed the other bottle and threw it into the alley, breaking it. Des Jarlais soon left for his home, where he died a few hours later. A chemical analysis of the contents of his stomach was made, and found to contain morphine. The stomach also contained a dark fluid like coffee. Des Jarlais was previously in good health, and the expert testimony tended to show that his death was due to poisoning.

The first Magee saw of the defendant was in a restaurant in Sioux City. The defendant was evidently attempting to get the Western Union office by telephone, for the purpose of securing a messenger to take the sandwiches and coffee to the police station. Observing Magee, the defendant hung up the telephone receiver, and inquired of him if he would deliver some packages. Receiving an affirmative reply, the defendant went to an automobile which was standing at the curb near the restaurant, and took the packages therefrom and gave them to Magee, to be delivered to Dorothy Korth, his wife, at the police station. The automobile was occupied by a stranger. On the following day, possession was taken of the automobile by a police officer, who testified upon the trial that it belonged to a man known as Cutie Kelly, then and for a long time previous thereto, engaged in the illegal sale of narcotics. Kelly disappeared in the meantime, and had not at the time of the trial been apprehended. The record contains no direct proof that the defendant placed the drug in the coffee, or that he knew of its presence therein. Upon this point, the State relies wholly upon circumstances. Direct proof was impossible. No one saw defendant in possession of the bottles until he removed them from the automobile. There

is nothing to indicate a motive on the part of the defendant to attempt to supply his wife with coffee containing the quantity of morphine disclosed by the record. On the other hand, no good reason appears for his desiring to provide refreshments for her at all at 1:30 A. M. The circumstances are significantly suspicious, but mere suspicion is not sufficient to justify a conviction. That the defendant had some well settled purpose in securing a messenger boy to deliver the liquid to the police station must, of course, be conceded. That the liquid contained morphine is clearly proven. The only doubtful question is, What did the defendant have to do with making the mixture, if anything, and what did he know about the contents of the bottles? The burden was upon the State to prove either that he made the mixture or was familiar therewith. It seems to us that the record leaves too much at this point to conjecture. Kelly was the owner of the automobile from which the bottles were taken by the defendant, and, so far as the evidence bears on that point, it is shown that he is an illicit vendor of narcotics. The evidence just as fairly shows that Kelly, and not the defendant, placed the poison in the coffee. A conviction cannot be rested upon suspicion alone.

It is our conclusion that the State failed in its proof to show that the defendant either placed the morphine in the coffee or knew of its presence therein. If the evidence of the State covered the point we have just considered, we would have no hesitation in holding that the defendant was criminally negligent in the way he handled the poison.

III. Titus testified that he saw the deceased take one of the bottles of coffee and go into the shoe-shining parlor which adjoined the Western Union office. Both Titus and Magee testified that they saw deceased return almost immediately to the Western Union office, with the empty bottle in his hand; that, in answer to questions asked him, he complained of feeling sick and dizzy, and of having a headache, and said that the coffee did not taste good. The deceased left for home in about twenty minutes after he took the bottle. No one saw the deceased drink the coffee. This testimony was admitted upon the theory that it was a part of the *res gestae,* over the objections of the defendant that it was incompetent, immaterial, irrelevant, and hearsay. The test of ad-

3. CRIMINAL LAW: evidence: *res gestae.*

missibility of the declarations of a person deceased on the ground that it is a part of the res gestae is, Were they made spontaneously, and approximately contemporaneously with the occurrence, or were they made at a subsequent time, with premeditation and design, and as a mere recital of the occurrence? *Christopherson v. Chicago, M. & St. P. R. Co.,* 135 Iowa 409; *Keyes v. City of Cedar Falls,* 107 Iowa 509; *State v. Lewallen,* 198 Iowa 382; *State v. Hessenius,* 165 Iowa 415; *State v. Novak,* 151 Iowa 536. The evidence does not disclose exactly how long Des Jarlais was in the shoe-shining parlor, nor just what time elapsed before the conversation occurred, after he returned to the office. It must have been within a very few minutes. We think it clear that the statements were so closely connected with what occurred that they are clearly a part of the res gestae. It was not a mere recital of a past occurrence, but a contemporaneous statement of what occurred in the shoe-shining parlor, and of the results immediately following the drinking of the coffee. Neither *Whitney v. City of Sioux City,* 172 Iowa 336, nor *State v. Brooks,* 192 Iowa 1107, is in point. They are readily distinguishable on the facts.

IV. A medical witness was permitted, in answer to a hypothetical question based upon the testimony of other witnesses and his own examination of the body of the deceased, to state

4. EVIDENCE: opinion evidence: cause of death.

that, in his opinion, death was caused by morphine poisoning. It is contended by counsel for the defendant that the answer invades the province of the jury, and is, therefore, incompetent. The objection is without merit. *State v. Brackey,* 175 Iowa 599; *State v. Hessenius,* supra; *Reynolds & Heitsman v. Henry,* 193 Iowa 164. *State v. Pillsbury,* 195 Iowa 569, and other cases relied upon by appellant, are readily distinguishable from the foregoing case. They merely hold that the evidence there involved was, because of remoteness, inadmissible.

The foregoing are all of the matters argued by the defendant or relied upon for reversal. For the error pointed out, the judgment is reversed.—*Reversed.*

EVANS, FAVILLE, ALBERT, MORLING, and KINDIG, JJ., concur.

DE GRAFF and WAGNER, JJ., dissent.